John LASCO, Plaintiff,

v.

Melvin KOCH et al., Defendants.

No. S–CIV–76–0155.

United States District Court, S. D. Illinois, S. D.

Feb. 25, 1977.

James M. Drake, Springfield, Ill., for plaintiff.

John W. Russell, Phelps, Russell, Carmody & Kasten, Carlinville, Ill., for defendants Melvin Koch, John J. Houlihan and Nolan B. Jones.

Donald R. Schuering, Goehl, Adams & Schuering, Quincy, Ill., for defendant Michael McClain.

James L. Palmer, Scholz, Staff & Brickman, Quincy, Ill., for defendant Hubert Staff.

## ORDER

ACKERMAN, District Judge.

Plaintiff, John Lasco, has filed an action in this Court, the gravamen of the complaint being that his employment as a civil servant with the State of Illinois, Illinois Veterans' Home, has been terminated for political reasons. The named defendants are Melvin Koch, Superintendent of the Illinois Veterans' Home; John J. Houlihan, Director of the Department of Veterans' Affairs of Illinois; Hubert Staff, Chairman of the Democratic Central Committee of Adams County, Illinois; Michael McClain, Illinois State Representative for the 48th District of Illinois; and, Nolan B. Jones, Director of Personnel of Illinois.

The Plaintiff is seeking preliminary and injunctive relief, and damages in excess of $10,000. Plaintiff has alleged violations of the First and Fourteenth Amendments to the Constitution, invoking this Court's jurisdiction under 28 U.S.C. § 1331. Plaintiff

also seeks relief under 42 U.S.C. §§ 1983, 1985, 1986, and 1988; jurisdiction is properly predicated on 28 U.S.C. § 1343. Relief is also sought under 28 U.S.C. §§ 2201 and 2202.

Since 1973 Plaintiff has been employed at the Illinois Veterans' Home in Quincy, Illinois. The title of his position is Welfare Executive III, although he appears to have acted in the capacity of Assistant Superintendent. He is a certified employee under the merit provisions of the Illinois Personnel Code (Ill.Rev.Stat., Ch. 127, § 63b108a, et seq.).

The Veterans' Home is a health care facility, which, until August 15, 1976, was operated under supervision of the Illinois Department of Children and Family Services; at that time responsibility for the Home was transferred to the Illinois Department of Veterans' Affairs (Ill.Rev. Stat., Ch. 23, § 5051). There are approximately 435 employees at the home.

Briefly, Plaintiff Lasco has alleged that beginning in 1975, Defendants Koch and McClain conspired to remove him from his position at the Veterans' Home because of his political affiliation, and that over the course of next year others joined in this conspiracy; that two persons were hired with the purpose of absorbing Plaintiff's duties; that Defendant Koch caused Plaintiff's duties to be changed and reduced, and that early in January 1976 an employment reorganization at the Veterans' Home occurred; and that out of 435 positions at the home, only Plaintiff's position of Welfare Executive III was to be abolished.

Plaintiff supported a candidate for Governor in the Democratic Party primary while some of the Defendants supported the opposing party candidate. The record shows that in March 1976, shortly after the primary elections, Defendant Koch placed a disciplinary note in Plaintiff's personnel file. A subsequent Grievance Procedure resulted in the letter being removed. The record further indicates that after the primary elections, defendant Koch wrote several memoranda critical of the Plaintiff which were included in Plaintiff's personnel file.

On November 24, 1976, Plaintiff received notification that he was to be laid off. He alleges that this is in fact a discharge, but because he has committed no act which would be a cause for discharge under the Personnel Code (Ill.Rev.Stat. Ch. 127, § 63b111) and because Plaintiff would be entitled to a plenary hearing before the Civil Service Commission on any attempt to discharge him, the Defendants characterized the termination of his employment as a layoff pursuant to a valid reorganization.

On December 13, 1976, Plaintiff filed his Complaint in this case. Defendant Hubert Staff has filed a motion to dismiss; defendant Michael McClain has filed a motion for summary judgment and a motion to dismiss; and defendants Koch, Houlihan, and Jones have answered and pray that this Court deny the relief requested and dismiss the complaint. The Defendants' basic contentions are that Plaintiff has failed to state a cause of action, that Plaintiff has failed to exhaust available administrative remedies, and that Plaintiff Lasco has been laid-off, not discharged.

This Court entered a Temporary Restraining Order enjoining the Defendants from terminating the Plaintiff from his position at the Illinois Veterans' Home until further order of this Court. Hearings were held in the last part of December, and this Court once again entered a Temporary Restraining Order on January 6, 1977, continuing the cause pending receipt of written arguments on the issue of the propriety of granting a preliminary injunction. It is in this posture that the case is now before the Court.

█ It is clear to this Court that Plaintiff has stated a cause of action. In *Perry V. Sindermann*, 408 U.S. 593, at 598, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) the United States Supreme Court stated:

For at least a quarter [of a] century this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit

for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.

Thus the allegation by Plaintiff Lasco that employment with the State was terminated because he exercised his First Amendment rights states a cause of action cognizable under the civil rights statute and 28 U.S.C. § 1331, the general federal question provision.

Of course, Plaintiff has not proved that the termination of his employment was for political reasons, he has only alleged it. His allegations, however, are sufficient to entitle him to present evidence in this Court and to obtain relief should he prevail, unless there is a doctrine of judicial restraint to which this Court would feel it appropriate and best to yield.

*Exhaustion of State Remedies*

Exhaustion is a doctrine based in a concern that certain administrative or judicial prerequisites be satisfied prior to the institution of judicial proceedings; it is similar to the doctrine of abstention in that both doctrines focus on the point at which it is proper for a court to entertain a suit. If that point has not yet been reached, the court will generally dismiss the complaint or stay jurisdiction, while allowing wide rights of return once compliance with the doctrines has been achieved.

The basic purpose of the exhaustion doctrine is to allow administrative agencies to perform functions within their own special competence—to make factual records, to apply their expertise, and to correct their own errors so as to moot judicial controversies. *Parisi v. Davidson*, 405 U.S. 34, at 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). However, in spite of powerful arguments in favor of the application of the exhaustion doctrine, exhaustion, traditionally, has not been required in four situations. Exhaustion is not required where the agency has no jurisdiction over the controversy. *Chicago v. Atchison, T.&S.F.Ry.*, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958). Likewise, exhaustion is not required where remedies are judicial in nature. Barron and Holtzoff, Federal Practice and Procedure, § 65. In addition, exhaustion has not been required where the remedy is inadequate or futile. *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Finally, exhaustion will not be required where the litigant will be subject to irreparable injury due to lengthy administrative procedures which fail to provide interim relief. *Oklahoma Natural Gas v. Russell*, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923). It seems to me that this case does not fall into any of the traditional exceptions to the exhaustion requirement.

However, another separate class of cases that do not seem to be generally subject to the exhaustion requirement are cases brought under the Civil Rights Act. The seminal decision in this area is *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In *Monroe*, the Court held that a plaintiff bringing a § 1983 case was not required to exhaust state *judicial* remedies. In fact, the opinion is so broadly worded as to indicate that there is no requirement of state administrative remedies in § 1983 suits. Four subsequent Supreme Court decisions appear to confirm the relaxation of the exhaustion requirement in § 1983 cases. *Houghton v. Shafer*, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). It appears, however, to me that

these cases would all fall within one or more of the four aforementioned exceptions to the application of the exhaustion doctrine. In *Houghton*, for example, the Court stated, 392 U.S. at 640, 88 S.Ct. at 2120, that "to require petitioner to appeal (through administrative proceedings) to the Deputy Commissioner of Correction, the Commissioner, or to the Attorney General, would be to demand a futile act." In *King*, 392 U.S. at 312, n.4, 88 S.Ct. at 2131 the Court stated: "Decisions of this Court . . . establish that a plaintiff in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, is not required to exhaust administrative remedies where the constitutional challenge is sufficiently substantial, as here, to require convening of a three-judge court." In *King* a state regulation was being challenged as unconstitutional. Similarly, in *Damico*, a state welfare law making a paternal absence a requirement for ADC payments was being challenged as unconstitutional. It appears that the administrative bodies would not have been the proper forums for determining the constitutionality of the state regulations. Finally, in *McNeese*, the administrative personnel were not enpowered to give any remedy to the plaintiffs. The Court there indicated that the state remedy, though adequate in theory, was not available in practice.

The Second Circuit, it seems, has rejected the view that these four opinions abolished the exhaustion requirement; see *Eisen v. Eastman*, 421 F.2d 560 (2nd Cir. 1969), *cert. denied*, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75. The Seventh Circuit has also been reluctant to apply the no-exhaustion rule suggested by the Supreme Court decisions. In *Metcalf v. Swank*, 444 F.2d 1353 (7th Cir. 1971), *vacated*, 406 U.S. 914, 92 S.Ct. 1778, 32 L.Ed.2d 113 (1972), the Seventh Circuit had before it a constitutional challenge to the application of an Illinois Public Aid regulation. Plaintiff's position was that exhaustion was not required under § 1983. The Supreme Court precedents were considered and interpreted as not requiring an inflexible no-exhaustion rule. The Seventh Circuit reasoned that where a statute is

attacked as unconstitutional *as applied*, the administrative remedy is adequate and exhaustion is required so as to determine the finality of the administrative decision.

The Supreme Court, however, vacated the decision of the 7th Circuit for reconsideration in the light of its decision in *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). *Carter* involved the constitutionality of an Indiana welfare regulation which required persons seeking assistance because of the absence of a spouse, to wait for six months from the time of absence. The Plaintiffs there brought suit without exhausting the administrative remedies; a three-judge court dismissed. In a per curiam decision, the Supreme Court vacated the decision, stating at 671, 92 S.Ct. at 1234, that *Damico*, "an indistinguishable case, likewise establishes that exhaustion is not required in circumstances such as those presented here."

Analyses of these cases leads to the conclusion that exhaustion of state remedies is not required in actions brought under § 1983, though all the decisions seem to me to have involved the traditional no-exhaustion concerns of inadequacy or futility or lack of jurisdiction.

I am cognizant of recent Supreme Court decisions which indicate that the no-exhaustion requirement may have reached its limits in § 1983 actions; see, for example, *Prieser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). However, at this time, the no-exhaustion requirement has been curtailed only with respect to cases in the nature of habeas corpus, and that the holdings in those particular cases are inapplicable to the case at hand.

However, none of the cases discussed really involved questions of local law. As Justice Douglas, in writing the opinion in *McNeese v. Board of Education*, *supra*, 373 U.S. at 673, 83 S.Ct. at 1436, stated:

Where the strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be

brought in the state court. See *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971]; *Thompson v. Magnolia Co.*, 309 U.S. 478 [60 S.Ct. 628, 84 L.Ed. 525]; *Harrison v. NAACP*, 360 U.S. 167 [79 S.Ct. 1025, 3 L.Ed.2d 1152]. Thus we have stayed the hands of a Federal District Court when it sought to enjoin enforcement of a state administrative order enforcing state law, since any federal question could be reviewed when the case came here through the hierarchy of state courts. *Burford v. Sun Oil Co.*, 319 U.S. 315 [63 S.Ct. 1098, 87 L.Ed. 1424].

■ So, while I conclude that exhaustion of state remedies is not required in this case, it should be noted that exhaustion is not the only doctrine which may require a federal court to refrain from exercising jurisdiction. Though the parties do not raise the issues, the doctrines of primary jurisdiction and abstention may also control the timing of federal court action and should be taken into account.

### Abstention

Although there are several abstention doctrines, the Court is concerned with only two.

■ Basically, abstention is based in concern for the special problems which beset a federal form of government. In some cases where jurisdiction may lie, it should not be exercised in order to avoid unnecessary conflict with important state functions or a needless prediction as to matters which a state may speak with final authority. Barron and Holtzoff, Federal Practice and Procedure, § 64.

■ The first and most obvious abstention doctrine is in cases where some state action is being challenged as contrary to the United States Constitution and there are questions of state law present in the case. The leading case here is *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in which the company was seeking to enjoin the enforcement of an order of the Texas Com-

mission. There was a federal constitutional question presented as well as a substantial question of state law as to whether the Texas statute gave the commission power to make the order in question. The federal district court clearly had jurisdiction because of the federal question, and could have exercised ancillary jurisdiction to decide state issues, but the wisdom of exercising such jurisdiction seemed very doubtful.

A unanimous Court, at 498, 61 S.Ct. at 644, stated:

The complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

The Court further stated, at 500, 61 S.Ct. at 645:

The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction. . . . Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law, or the administration of a specialized scheme for liquidating embarrassed business enterprises, or the final authority of a state court to interpret doubtful regulatory laws of the state. (Cites omitted).

The *Pullman* Court ordered the trial court to refrain from deciding the case but ordered it to retain jurisdiction until the parties had an opportunity to obtain from the state court a decision on the state issues involved.

Thus, the state questions were left for the state to decide, and the federal court was able to avoid a premature or unnecessary decision of the federal question.

The second abstention doctrine which concerns this Court is that a federal court should refrain from exercising its jurisdic-

tion in order to avoid conflict with the administration by a state of its own affairs. Wright, Law of Federal Courts, 2nd Ed., § 52. Thus, a federal court should not issue declaratory judgments as to state taxes, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); nor interfere with a large-scale highway program simply to protect a single landowner's right to compensation, *Martin v. Creasy*, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959); nor take jurisdiction in a receivership proceeding where the state has a comprehensive procedure for liquidating corporations of the sort involved, *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841. See, also *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and discussion in Wright, *supra*.

In the *Pullman* type cases the district court would retain jurisdiction while the parties seek a state ruling on the state issues, while in the second abstention doctrine cases, where the federal court defers to avoid interference with state activities or policy, dismissal of the action, rather than retention of jurisdiction, is *normally* appropriate. See, Wright, *supra*.

### Primary Jurisdiction

■ The final doctrine of judicial restraint that I wish to discuss is that of primary jurisdiction. The doctrine is concerned with a determination of whether or not a court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the Court. Davis, Administrative Law Text, § 19.01.

The purpose of refraining under the doctrine of primary jurisdiction is so that a party may seek an initial ruling of an administrative tribunal, not because the agency is inherently superior in its ability to handle a problem, but because the court should have the advantage in reaching its determination of any contribution the agency can make in its field of expertise. *Or-*

*ange and Rockland Utilities, Inc., v. Howard Oil Co.*, 416 F.Supp. 460 (1976).

Several factors are operative in the court's examination of a primary jurisdiction question:

1. whether the question at issue is within the conventional experience of judges, *Society of New York Hospital v. Associated Hospital Service of N. Y.*, 367 F.Supp. 149 (S.D.N.Y.1973);

2. whether the question at issue is particularly within the agency's discretion, *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952);

3. whether there exists a danger of inconsistent rulings, *MCI Communications Corp. v. American Telephone and Telegraph Co.*, 496 F.2d 214 (3rd Cir. 1974); and,

4. whether a prior application to an agency has been made. *Id.*

■ The doctrine does not necessarily allocate power between the courts and the agencies, it governs only the question of whether the courts or the agencies will initially decide a particular issue, not the question of which will finally decide the cause. Davis, *supra*.

The doctrine represents a recognition for the need for an orderly coordination between the functions of the court and agency in securing objectives of their often overlapping competency. *Interstate Commerce Commission v. All–Am, Inc.*, 505 F.2d 1360 (7th Cir. 1974). The reason for applying the primary jurisdiction doctrine is not a belief that an agency's expertise makes it superior to a court, but rather that a court, confronted with problems within an agency's area of specialization, should have the advantage of whatever contributions the agency can make to the solutions.

■ Although the cases in the area generally involve industry regulation questions and federal agency-federal court interaction, there appears to be no reason that application of this judge-made doctrine should be limited to such situations.

The brief discussion of these doctrines of judicial restraint makes it clear that they share some of the same policies, rooted in the same concerns—avoidance of unnecessary or premature adjudication of constitutional issues, comity, respect for the sovereignty of the state and its administration of its own internal affairs, and concern for the public interest. It is upon these preeminent policies and concerns that I base my action in this case.

First, the Court grants Plaintiff's Motion for Preliminary Injunction; second, the Court stays further exercise of jurisdiction and refers the cause to the State Civil Service Commission for hearings on the question of the validity of the reorganization and the related question of lay-off as subterfuge for discharge. Should the Plaintiff not expeditiously utilize the state administrative mechanism, the Court will promptly hear any arguments concerning dissolving the preliminary injunction.

I am well aware that the preliminary injunction is an extraordinary remedy; I wish to stress that this is a most unusual case and that the preliminary injunctions will not be granted pro forma in every personnel dismissal case brought under § 1983 or § 1331. The standards for granting a preliminary injunction in federal courts are well established.

A preliminary injunction is proper only where there is a showing that: (1) plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the balance of the hardships tilts towards plaintiffs; and (3) plaintiffs have at least a reasonable likelihood of success on the merits. *Burns v. Paddock*, 503 F.2d 18, 28 (7th Cir. 1973); *accord, Milsen Co. v. Southland Corp.*, 454 F.2d 363, 367 (7th Cir. 1971).

It is my belief that on the basis of the record before the Court, and while noting and emphasizing that this Court has not heard the case on the merits and is offering no opinion as to the outcome in a trial on the merits, the Plaintiff has sustained his burden for purposes of a preliminary injunction.

In urging the Court's consideration of this case, Plaintiff Lasco has placed much reliance on the recent United States decision in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

The *Elrod* plaintiffs were patronage employees holding non-policy making positions. It was undisputed that they were discharged from their employ solely because of their political affiliation. The Supreme Court held that such dismissals violated plaintiffs' First and Fourteenth Amendment rights.

This Court, however, finds the case at hand readily distinguishable from *Elrod*. There, the Supreme Court stated at page 352, 96 S.Ct. at page 2679, "We are asked only to determine whether the politically motivated discharge of employees of the Cook County Sheriff's Office comports with the limitations of the First and Fourteenth Amendments. This involves *solely a question of constitutional interpretation*, a function ultimately the responsibility of this Court." (Emphasis added.)

However, in this case, I face a situation in which it is strongly contended that Plaintiff has not been discharged because of his political affiliation, but rather that he has been laid-off pursuant to a valid reorganization, i. e., compelled by reason of lack of funds or work, abolition of a position, or material changes in duties or organizations (Ill.Rev.Stat. Ch. 127 § 63b108b.13). If this is true, it appears likely that the recent United States Supreme Court decision in *Mt. Healthy City Board of Ed. v. Doyle*, —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) would apply.

In *Mt. Healthy*, Doyle, an untenured teacher (who had been involved in an altercation with another teacher, an argument with school cafeteria employees, an incident in which he swore at students, and an incident in which he made obscene gestures to girl students) conveyed through a phone call to a radio station the substance of an intra-school memo concerning a teachers' dress code. The radio station used the memo as a news item. Thereafter, the

school board advised Doyle that he would not be rehired, and cited as reasons his lack of tact in handling professional matters, with specific mention of the radio station and obscene-gesture incidents.

Doyle then brought an action in federal district court, claiming that the Board's refusal to rehire him violated his First and Fourteenth Amendment rights.

The district court found that the phone call was protected by the First Amendment and that because it had played a substantial part in the Board's decision not to rehire Doyle, Doyle was entitled to reinstatement with backpay. The Court of Appeals for the Sixth Circuit affirmed. The Supreme Court vacated the judgment and remanded the case, holding that the fact that conduct protected by the First and Fourteenth Amendments played a substantial part in the decision not to rehire Doyle did not necessarily amount to a constitutional violation justifying remedial action. The Court, at p. ——, 97 S.Ct. at p. 575, stated:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing . . . The constitutional principle at stake is sufficiently vindicated if such employee is placed in no worse a position than if he had not engaged in the conduct . . . (a) candidate ought not to be able, by engaging (in constitutionally protected conduct), to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

Under the reasoning of *Mt. Healthy*, it seems that if the reorganization were valid, there would be no violation of Plaintiff Lasco's constitutional rights and Plaintiff could not prevail in his civil rights tort action, under 42 U.S.C. § 1983 or 28 U.S.C. § 1331.

It is therefore clear to me that in order to decide Plaintiff Lasco's constitutional claims, I would have to determine at the outset whether or not there was a valid reorganization which resulted in the Plaintiff being laid off.

This is not a case where a state administrative process or state regulation is being challenged, nor is this a matter of statutory interpretation, both tasks to which this Court would feel equal. Instead, I view this case as one involving complex considerations of state management policy and efficiency in a government-run medical facility which employs over 400 persons, and for that reason I feel it appropriate to exercise judicial restraint.

The General Assembly of the State of Illinois has created and sustained an administrative mechanism with one of its specific purposes being to review the myriad of challenged personnel termination decisions inherent in any reorganization, whether that reorganization is legitimate, i. e., for management and fiscal efficiency purposes, or whether that reorganization is a mere ploy to facilitate the removal of politically undesirable persons.

To this end, the Personnel Code (Ill.Rev. Stat., Ch. 127 § 63b108) provides that the Director of Personnel may adopt rules for the purposes specified in the Code, and such rules, if not disapproved by the Civil Service Commission, shall have the force and effect of law. Section 8b.13 of the Code (Ill.Rev.Stat. Ch. 127 § 63b108b.13) provides that the Director of Personnel may adopt rules for the purposes specified in the Code, and such rules, if not disapproved by the Civil Service Commission, shall have the force and effect of law. Section 8b.13 of the Code (Ill.Rev.Stat. Ch. 127 § 63b108b.13) provides for rules "For layoffs by reason of lack of funds or work, abolition of a position or material change in duties or organization, and for reemployment of employees so laid off, giving consideration in both lay-offs and reemployment to performance record and seniority in service."

A certified employee has the right to petition the Director, within 15 days of

receipt of the layoff notice, for a reconsideration (Rule 2–596), and a right to request a hearing before the Civil Service Commission, which may consist of a staff investigation, or informal hearing, or formal hearing, on the validity of the layoff (Art. XII, Rules of the Civil Service Commission). In addition, all final decisions of the Commission are subject to judicial review pursuant to the provisions of the "Administrative Review Act" (Ill.Rev.Stat. Ch. 127 § 63b111a). It is clear from the record that Plaintiff Lasco has preserved his rights under the Civil Service Commission.

While it is true that the Civil Service Commission, in the event of reinstatement, will provide for the reimbursement of salary lost subsequent to the effective date of discharge (Ill.Rev.Stat. Ch. 127 § 63b111), it is obvious to this Court that this does nothing to allay the significant financial harm which can result during the interim. It is unfortunate that the State legislature has not seen fit to grant the Civil Service Commission the power to keep an employee, involved in an appeal process, salaried and on-the-job during the pendency of the administrative process. Since this interim relief is not available from the Commission, persons in the position of Plaintiff Lasco, are forced to go to the courts, state and federal, in order to minimize their damages. By granting the preliminary injunction, I have sought to minimize the damage to Plaintiff.

Should the Plaintiff prevail before the Commission, he will be reinstated (Ill.Rev. Stat. Ch. 127 § 63b111) and the need for adjudication on the constitutional question will most likely be obviated since Plaintiff's damages are minimized by reason of the issuance of the preliminary injunction. On the other hand, should the Commission find the layoff valid, this Court, though not bound by the Commission's decision, would undoubtedly be greatly aided by its fact finding and record.

Therefore, for the reasons discussed in the body of this opinion, the Court grants Plaintiff's Motion for a Preliminary Injunction and refers the cause to the State Civil Service Commission for hearings on the question of the validity of the reorganization.