**UNITED STATES of America,**
**Appellant,**

v.

**Maude M. BURKET, Appellee.**

**No. 25897.**

United States Court of Appeals
Fifth Circuit.

Oct. 24, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, David English Carmack, William A. Friedlander, Harris Weinstein, Attys., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellant. Robert L. Steuer, Asst. U. S. Atty., of counsel.

E. D. Treadwell, Jr., of Treadwell & Treadwell, Arcadia, Fla., George W. Ericksen, of MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before TUTTLE, COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal involves federal income taxes for the taxable year 1965 in the amount of $17,792.98. The taxpayer, Mrs. Maude M. Burket, instituted this refund action in the District Court on the premises that income which she received from sales of certain property was entitled to capital gains treatment. At the time of the filing of the action, the taxpayer filed a demand for the factual issues to be determined by a jury. The Government filed an answer denying that the taxpayer was entitled to a refund. The Government then proceeded to take Mrs. Burket's testimony by deposition.

After the taking of the deposition, the taxpayer then moved for summary judgment based upon Mrs. Burket's deposition and affidavits on the ground that there was no genuine issue as to any material fact to be resolved, and that, as a matter of law, the gain realized from the sales of the property was tax-

able at capital gain rates. The Government opposed the taxpayer's motion, asserting that there was a genuine issue of material fact to be resolved, that the issue of the taxpayer's credibility should be tried by the jury. The Government further asserted that the taxpayer's affidavit should not have been taken into consideration on taxpayer's motion, since the affidavit contained conclusions of law on the ultimate issues in the case, and that said affidavit was inadmissible under Rule 56(e), Federal Rules of Civil Procedure. In further support of its opposition, the Government presented an affidavit of Roger M. Moore, in whose possession were the taxpayer's and her deceased husband's income tax returns for the years 1957 through 1965, and Schedule 1 to the protest file relating to the returns for the years 1957 through 1963, true copies of which were attached to the Government's affidavit. The District Court concluded that there were no issues of material fact to be resolved and granted the taxpayer's motion for summary judgment.

The ultimate issue in this case is whether the gain received by the taxpayer in 1965 from the sale of certain parcels of real property, sold by the taxpayer's deceased husband in 1950, 1951 and 1958 through 1965 and reported on the installment basis, constituted ordinary income, as contended by the Government, or long-term capital gain, as contended by the taxpayer and held by the District Court. The narrow issue on appeal is whether the District Court correctly granted the taxpayer's motion for summary judgment on the ultimate issue which is essentially a factual question.

The facts as found by the District Court may be briefly stated as follows:

The income in question was derived from fifty-six sales transactions in real estate occurring between 1950 and 1965. All parcels of land were held for an appreciable period of time, ranging from five to fourteen years, before sale by Mrs. Burket and her husband. These lands were acquired by the taxpayer and her husband as an incident to their practice of investing in tax certificates. The funds for the purchase of tax certificates came from income derived from certain citrus groves and an express fruit shipping business owned by taxpayer and her husband.

A tax certificate represents a tax lien that exists in favor of the appropriate governmental unit. The purchase of a tax certificate confers the right to receive principal and the bidded rate of interest, within a legally defined limitation, from the owner of the encumbered land. It confers a possibility of title upon the holder thereof. Upon failure of the owner to redeem the tax certificate, the holder thereof can, if he is so disposed, make application, after notice, for a tax deed. If the land owner does not redeem the certificate, a tax deed is then issued by the governmental authority. The acquisition of the tax deed confers title to the land.

The taxpayer and her husband [1] purchased tax certificates in order to realize the high rate of interest which they returned. As is the general practice, they did not inspect the land prior to bidding for a tax certificate.

Most of the tax certificates which were purchased by the taxpayer and her husband were redeemed. Only those unredeemed tax certificates which encumbered worthwhile land would be reduced to a tax deed. The criterion for selection was the value of the land and the liens, if any, that encumbered the land. Tax deeds were acquired only on lands which were encumbered by tax certificates held by taxpayer and her husband.

The lands that were acquired by tax deed were unimproved and they remained raw land until sold. Neither the taxpayer nor her husband ever held a real estate license and neither of them ever actively solicited a prospective purchaser. Persons interested in any of their lands would take the initiative in effectuating a purchase. Further, neither taxpayer

---

1. Mr. Burket died in 1964.

nor her husband devoted time and effort to the sale of their lands.

However, the District Court omitted from its Findings of Fact certain facts which this Court feels are essential to a decision in this case. Contrary to the District Court's holding to the effect that the facts herein demonstrate an investment position on the part of the taxpayer and her husband, there were other facts, as shown by the exhibits attached to the affidavit filed in support of the Government's opposition to appellant's motion for summary judgment, which show that the finder of the facts could have found for the Government. There were admittedly a substantial number of sales of real estate which had been acquired by purchase of tax deeds and reported by the taxpayer and her deceased husband for the period 1957 through 1965 (ranging from a low of 5 transactions in 1965 to a high of 44 transactions in 1959).[2] Moreover, an extremely large amount of profit was generated by these real estate transactions during that period. Over that span of years, a total profit of approximately $874,331.25 was admittedly realized from this source, and in four of the years in question, it exceeded income received by the taxpayer and her husband from other sources, including that realized from tax certificates.[3] Moreover, the taxpayer admitted that, during the period of the above real estate sales, she and her husband were acquiring new property by obtaining tax deeds on unredeemed tax certificates

they held. As taxpayer deposed, it was more profitable to purchase tax deeds than to hold tax certificates. In selecting for the purpose of their acquisition the properties with respect to which the taxpayer or her husband held tax certificates, the taxpayer's husband[4] spent time checking the courthouse records on these properties and inspected them to see if a purchase would be worthwhile, i. e., profitable to him and taxpayer. From this factor, coupled with other factors in the case, it would be possible for reasonable men to draw the inference that the taxpayer and her husband were engaged in the business of acquiring and selling real estate for profit.

The question of whether certain properties were held by a taxpayer "primarily for sale to customers in the ordinary course of [his] trade or business" is essentially a question of fact, as this Court has held in United States v. Temple, 5 Cir., 355 F.2d 67, 68 (1966); Thompson v. Commissioner of Internal Revenue, 5 Cir., 322 F.2d 122, 127 (1963). In determining whether property is held primarily for sale to customers in the ordinary course of trade or business, so that the proceeds are taxable as ordinary income rather than taxable gains, each case must be decided on its own peculiar facts, and specific factors or combinations of them are not necessarily controlling. See Wood v. Commissioner of Internal Revenue, 5 Cir., 276 F.2d 586, 590 (1960). In resolving this essentially factual issue of whether the property

---

2. 1957, 22 sales transactions; 1958, 15 sales transactions; 1960, 16 sales transactions; 1961, 13 sales transactions; 1962, 25 sales transactions; 1963, 43 sales transactions; 1964, 19 sales transactions. As many of these sales were on the installment plan, income from them would appear in taxpayer's income tax returns for various years. Thus in 1965, income from 56 transactions was reported.

Further, Schedule 1 from the taxpayer's protest for the years 1957 through 1963 shows, with the exception of 1961, that taxpayer failed to report all of the income realized from the sales of real estate.

It is not clear whether the increased amounts represent additional transactions or increased payments on the transactions reported.

3. The percentage of taxpayer's and her husband's income from these real estate transactions when compared with total income from all sources is as follows: 1957, 53.8%; 1958, 52.8%; 1959, 64.5%; 1960, 42.2%; 1961, 32.5%; 1962, 43%; 1963, 61.4%; 1964, 43.7%; 1965, 35.4%.

4. The deposition of Mrs. Burket showed her husband, although not admitted to the Florida Bar, held an LL.B. degree from the University of Michigan.

sold was held primarily for sale to customers in the ordinary course of the taxpayer's business, this Court has laid down a number of factors to be considered. In Smith v. Dunn, 5 Cir., 224 F.2d 353, 356–357 (1955), this Court observed:

"What was the nature and character of the taxpayer's title to the property, the reason, purpose and intent of the acquisition and ownership and the period of its duration; and whether the property was held primarily for investment or as a part of the taxpayer's 'stock in trade', i. e., as property bought, held and sold for profit?

"What was the vocation of the taxpayer at the time of the sales and prior thereto, whether a real estate broker or engaged in some similar or allied business, having in mind that he may have more than one business; and considering whether the taxpayer maintained only one office and that for his main vocation, and whether his engagement in the additional business was separable from his investment in the property?

"What was the extent of the taxpayer's activity and 'busyness', and whether the additional business was an occupational undertaking to which he habitually devoted time, attention or effort with substantial regularity; and, if the activities were conducted through a representative, whether those activities were carried on by the representative as a part of his own business and at his own expense or primarily in behalf of the taxpayer, and particularly the character and degree of supervision or control exercised by the taxpayer over the representative?

"What were the extent and nature of the efforts to sell the property with the view of determining whether, in their fundamental aspects, these efforts amounted merely to rendering the investment assets more attractive and hence more salable or to an engaging in the business of developing unimproved real estate for income-producing purposes? In making this determination it is proper to consider the number, extent, continuity and substantiality of sales, and whether such sales were in the ordinary course of the taxpayer's business or were carried on independently of the taxpayer's business; the extent of subdividing, developing and advertising to increase sales, and the pressure exerted upon prospective purchases, and whether those activities smacked more of a legitimate liquidation of capital assets or active sales promotion for profit, having in mind that the mere fact of liquidation or the intent of the taxpayer alone are not determinative."

■ The presence of any one or more of the various factors is not necessarily determinative of a given case. Wood v. Commissioner, supra.

■ As a combination of factors could have supported either the Government or the taxpayer's position, a summary judgment was not the proper procedure to resolve the issue.

■ In order to entitle moving party to a summary judgment, it must be clearly shown that there is no genuine issue as to any material fact in the case, and that movant is entitled to a judgment in his favor as a matter of law. Summary Judgment should only be granted when it is clear what the truth is and where no genuine issue remains for trial. It is not the purpose of Rule 56 to deny to litigants the right of a trial if they really have issues to try. National Screen Service Corporation v. Poster Exchange, Inc., 5 Cir., 305 F.2d 647 (1962).

As the District Court erred in granting the motion for summary judgment, the judgment is therefore reversed and the case is remanded to the District Court for a trial before a jury.

Reversed.