Eliseo GARZA, Plaintiff-Appellee,
Cross-Appellant,

v.

Amador RODRIGUEZ, etc., Defendant,

The County of Cameron, Defendant-Appellant, Cross-Appellee.

No. 76–3898.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1977.

Orrin W. Johnson, Harlingen, Tex., Joe K. Hendley, Asst. Crim. Dist. Atty., Brownsville, Tex., for Cameron County.

James C. Harrington, San Juan, Tex., James A. Douglas, San Benito, Tex., Melvin L. Wulf, Joel M. Gora, American Civil Liberties Union Foundation, New York City, for Eliseo Garza.

Before GEWIN, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

Eliseo Garza was an investigator for the Juvenile Probation Department of Cameron County, Texas. On the night of December 20, 1975, after a party, he was arrested for being drunk. He became belligerent, demanded preferential treatment as a probation officer, used abusively foul language, cursed the director of his department who was called to the police station, among others, finally calmed down and was permitted to go home. On February 6, 1976, he was fired.

Since the firing took place only after Garza indicated that he was going to sue the police, he filed suit against his department director, Amador Rodriguez, and the County claiming unconstitutional employment discharge. He requested a declaratory decree, damages, and an injunction.

A jury awarded no damages, but the district judge subsequently entered a mandatory injunction ordering defendants to reinstate Garza to his job. The County appeals the injunction; Garza cross-appeals the failure to award back pay. We reverse the injunction, and affirm on the cross-appeal.

■ The parties dispute jurisdiction. Plaintiff concedes that the County is not a person against whom a cause of action can be asserted under 42 U.S.C.A. § 1983. *See City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Almeda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Plaintiff asserts federal question jurisdiction, however, under 28 U.S.C.A. § 1331 claiming an amount in controversy in excess of $10,000. By the time the case came up for the district court equitable relief, the jury had already decided that the plaintiff suffered no damage. But the amount in controversy, not the actual damages sustained, controls this jurisdiction.

■ In *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court held that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismiss-

al." At the time Garza brought this suit he was still unemployed. He sought back pay at a rate of $800/month and alleged bad faith and malice which could entitle him to recover punitive damages. Although the jury did not award Garza any monetary damages, it was far from a "legal certainty" at the time of suit that he would not be entitled to more than $10,000. *See Mount Healthy City Board of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), 45 U.S.L.W. 4079, 4080 (Jan. 11, 1977). It appears, therefore, the County was properly before the district court pursuant to its § 1331 jurisdiction.

■ We cannot sustain, however, the district court's holding that plaintiff was improperly discharged. The Texas statute, Tex.Rev.Civ.Stat. art. 5142 (Vernon 1971), governing removal of juvenile probation officers, bestowed upon the County the authority to discharge Garza for any reason, or even for no reason "at any time." Nevertheless, he could not be discharged for the exercise of his constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972).

Garza's behavior and speech at the police station on December 20, 1975, have no constitutional First Amendment protection. Lewd, obscene, profane, slanderous "fighting" words are not entitled to constitutional protection. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Nor can an employee claim First Amendment protection for speech used against him not because of speech itself, but because the speech evidences character traits undesirable in an employee. *Megill v. Board of Regents*, 541 F.2d 1073, 1085 (5th Cir. 1976). Since the district court found that Rodriguez had just cause to terminate Garza's employment because of the police station behavior, the question becomes whether the taking into consideration the threat to file a lawsuit invalidates the decision to fire.

■ Clearly, discharge because of the filing of a lawsuit can escape constitutional invalidity if such act affects the employee's

ability to perform his job. *Abbott v. Thetford,* 534 F.2d 1101 (5th Cir. 1976) (*en banc*), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977), 45 U.S.L.W. 3666 (April 5, 1977). Even though Rodriguez testified he was concerned about the effect such a lawsuit would have on the probation department's work with the police department, the jury and the judge found Garza's actions did not impede either the proper performance of his daily duties or the legitimate operations of the department.

On the other hand, in a decision not yet available to the district court in this case, the Supreme Court has recently rejected the notion that if "protected conduct played a part, 'substantial' or otherwise, in a decision" to fire, the decision would necessarily amount to a constitutional violation justifying action. *Mount Healthy City Board of Educ. v. Doyle, supra* 429 U.S. at 284, 97 S.Ct. 568. Applying the lessons of *Mount Healthy* to the facts of this case as found by the district judge requires reversal. The district judge found the County could have fired Garza because of his conduct of December 20, the basis of the termination notice given to Garza by Rodriguez: "My decision is primarily based on your conduct of December 20, 1975, which I regard as unbecoming an officer of this department." *Cf. Stewart v. Bailey,* 556 F.2d 281 (5th Cir. 1977) (dismissal reasonably justified by unprotected conduct valid even if motivated in part by arguably protected speech).

Shortly after the December 20 incident, Rodriguez informed Garza he could be put on probation or dismissed. About six weeks later, when Rodriguez learned from others of the intended lawsuit, he told Garza that he should have been advised of Garza's intentions regarding a suit against the Police Department. He was upset because Garza had not approached him on the matter and thought it indicated a lack of respect for his superior's position. After conferring with the juvenile court judge as to what action should be taken, he gave the termination notice. Several weeks later, Garza filed suit against the police. Presumably, however, once Garza's attitude was revealed by the declared intention to file the lawsuit without consulting his superiors, he was fired, and would have remained so, whether or not he later filed a lawsuit.

Certainly, the police lawsuit was directly related to Garza's conduct which would justify firing, and if held to insulate him from discharge could place him "in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." 429 U.S. at 285, 97 S.Ct. at 575.

The district court stated as follows:

This Court is of the opinion that had Rodriguez fired Garza shortly after the incident in the park and the disturbance which carried on into the jail, he would have been within his authority in doing so, and Garza would have had no legal recourse for such action. However, having waited several weeks, as he did, Rodriguez may have been, as the Court views it, on shaky ground. However, we are not here concerned with the compensatory and the punitive damages to which Garza may have been entitled to receive. The jury gave him nothing.

What we must now decide is whether or not Garza should be reinstated as an investigator with said Cameron County Juvenile Probation Office. As far as the Court was concerned, his refusal to show his driver's license and his insistence on identifying himself as a juvenile probation officer was certainly unbecoming an officer in any department. While the Court has already concluded that the facts relating to this matter were such as to authorize, at one point in this story, the termination of Garza's employment, we must, however, still answer the question of whether or not the delayed firing was of such doubtful validity as to require the Juvenile Probation Department to reinstate the Plaintiff. This Court concludes that Eliseo Garza should be reinstated in the position as investigator in the Juvenile Probation Department of Cameron County, Texas, as of the date of the final judgment in this case, which will

be signed and ordered entered as of the date of this Memorandum and Order.

Under these circumstances, neither the formed intention to file the lawsuit, nor the filing of the lawsuit was constitutionally protected conduct which would prevent Garza's employer from using that as a part of the reason for firing him. It appears that the thrust of *Mount Healthy* leads to the conclusion based on the total opinion of the district court that there was no violation of Garza's rights upon which to posit equitable relief.

Much is made of an interrogatory which appellee contends was answered favorably by the jury.

> We, the Jury, find that the principal reason Amador Rodriguez decided to discharge Eliseo Garza was that he criticized the police before his employer and others, and because Mr. Garza eventually filed suit against officers of the Brownsville Police Department.

This interrogatory, however, couples the clearly permissible with the possibly impermissible, and does not dispose of the case under *Mount Healthy*, which expressly recognizes that the two may be intertwined without constitutional fault.

The jury decided that plaintiff was entitled to no damages. The denial of back pay must be affirmed. The injunctive relief ordered by the district court must be reversed.

REVERSED ON THE DIRECT APPEAL.

AFFIRMED ON THE CROSS APPEAL.