Bobby F. TANNER, Ned A. Knuth, Carol A. Campbell, Tommy Carisle, Joseph E. Davenport, and Francic J. Ugorek, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Malcolm McCALL, individually and in his official capacity as Sheriff of Lake County, Florida, Defendant.

No. 77-2-Civ-Oc.

United States District Court,
M. D. Florida,
Ocala Division.

Oct. 20, 1977.

See also, D.C., 425 F.Supp. 257.

Ben R. Patterson, Tallahassee, Fla., for plaintiffs.

Jack Skelding, Tallahassee, Fla., C. Welborn Daniel, Clermont, Fla., for defendant.

## OPINION

CHARLES R. SCOTT, District Judge.

Plaintiffs have moved for a preliminary injunction and defendant has moved for summary judgment. Plaintiffs are former deputies of the Sheriff of Lake County, Florida, and defendant is the Sheriff. Three issues are presented by these motions: first, whether plaintiffs had a property interest (de facto or de jure) in their employment as Lake County Sheriff's deputies, which they were deprived of without the fundamental due process guaranteed by the Fourteenth Amendment; second, whether plaintiffs' First Amendment freedoms have been infringed by termination from their employment solely because of their political affiliation; and third, whether plaintiffs' liberty interest under the Fourteenth Amendment has been violated by having their reputations as law enforcement officers stigmatized so that they are hindered from finding new law enforcement work.

## FACTS

In November, 1976, the incumbent Sheriff of Lake County, Florida ("Sheriff Bliss") was defeated by defendant in an election. At that time, plaintiffs had all been deputies under Sheriff Bliss for several years; and all plaintiffs but one have been in law enforcement work for more than ten years. There is no evidence that plaintiffs were anything other than satisfactory employees. On or about January 4, 1977, after personally interviewing nearly all of the employees of the sheriff's department, defendant terminated plaintiffs' employment, along with about a dozen other employees. All of the plaintiffs supported their then-employer,

the incumbent Sheriff Bliss, in the election that he lost to defendant.

## LAW

### Summary Judgment: Two Criteria

■ Defendant has moved for summary judgment, to which he is entitled, in part or altogether, only if he meets his burden to show (1) the absence of any genuine issues of material fact on any or all of plaintiffs' claims, and (2) the right to a summary judgment on any or all of those claims under the indisputable dictates of the law. Fed.R.Civ.P. 56; *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1968); *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Eberhardy v. GMC,* 404 F.Supp. 826, 829 (M.D.Fla. 1975) *aff'd sub nom. Van Eberhardy v. GMC,* 534 F.2d 1406 (5th Cir. 1976). If, as a matter of federal law, *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969), real, litigable issues exist, the parties must be allowed to try them; and summary judgment would be improper. *Insurance Co. of N. Amer. v. Bosworth Constr. Co.,* 469 F.2d 1266, 1268 (5th Cir. 1972); *United States v. Burket,* 402 F.2d 426, 430 (5th Cir. 1968). Where, however, as a matter of federal law, some or all issues raised are wells without the water of legal merit, trial of those issues would be wasteful and unnecessary. *Tyler v. Vickery,* 517 F.2d 1089, 1094–95 (5th Cir. 1975). Summary judgment, then, is expedient and warranted as "a valuable tool in the law's effort to stem the tide of flooding litigation." *DeBardeleben v. Cummings,* 453 F.2d 320, 326 (5th Cir. 1972).

### First Issue: Property Interest

■ "A terminated or non-renewed public employee is entitled" to the due process safeguards of the Fourteenth Amendment "only if his termination or non-renewal is a deprivation of liberty or property interests." *Siler v. Brady Indep. School Dist.,* 553 F.2d 385, 387 (5th Cir. 1977) citing *Board of Regents v. Roth,* 408 U.S. 564, 571–72, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548, 557–58 (1972); *Stewart v. Bailey,* 556 F.2d 281, 285 (5th Cir. 1977); *Thurston v. Dekle,* 531 F.2d 1264, 1271 (5th Cir. 1976). In *Board of Regents v. Roth, supra,* the Supreme Court stated that property interests "may take many forms." 408 U.S. at 576, 92 S.Ct. at 2708, 33 L.Ed.2d at 560. The existence of genuine property interests is not a matter of the effect of federal, constitutional law, however. *Id.* at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

> Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Id.*

Recently, the Supreme Court reaffirmed this analysis of 'property interest.' *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976);

> A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. *Id.* at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690.

In *Bishop v. Wood,* a discharged city police officer claimed that he was deprived of a property interest in his job without the procedural safeguards of due process. He argued that a city ordinance allowing dismissal of permanent employees for persistently unsatisfactory performance created an employment tenure; and that such a tenure was a property interest requiring the fundamentals of due process before it could be removed. The ordinance had not been construed by any state courts, and the district judge interpreted it from his many years of experience with legal practice in the state. *Id.* at 345, 96 S.Ct. at 2078, 48 L.Ed.2d at 690. The ordinance was ambiguous enough to accommodate different interpretations, *id.,* and the Court of Appeals eventually divided evenly over it. *Id.* at 346, 96 S.Ct. at 2078, 48 L.Ed. at 691. The Supreme Court held that the district court's interpretation was both possible and tenable; that it derived indirect support from a

state supreme court decision; and that the Court of Appeals's acceptance of the interpretation foreclosed the high court's independent reassessment of it. *Id.* at 345–47, 96 S.Ct. at 2078–2079, 48 L.Ed.2d at 690–91.

On the other hand, the Fifth Circuit interpreted a municipal civil service board rule, permitting suspensions and dismissals of an employee for cause only, as creating a legitimate property interest in continued employment that could "not be taken away without due process." *Thurston v. Dekle,* 531 F.2d at 1272.

A divided panel of the Fifth Circuit, in *Stapp v. Avoyelles Parish School Bd.,* 545 F.2d 527 (5th Cir. 1977) decided that a school board superintendent's letter of intent to a non-tenured, probationary principal created a de facto objective expectations of continued employment, amounting to a protected property interest. *Id.* at 533–34. That decision is problematic, however, because it constitutes a federal court's ruling that specific individual conduct by the superintendent could create an employment property interest, despite established state law to the contrary. *Id.* at 535–37 (Jones, J., dissenting).

*Siler v. Brady Indep. School Dist.,* 553 F.2d 385 (5th Cir. 1977), is more closely in line with *Bishop v. Wood, supra,* and *Board of Regents v. Roth, supra* (by the Supreme Court), as well as *Thurston v. Dekle, supra,* (by the Fifth Circuit). The plaintiff in *Siler v. Brady Indep. School Dist., supra,* had been a school teacher employed by a school district under two successive one-year contracts. During the life of the second contract, the school district was annexed by the defendant school district. A resolution by the board of the defendant school district at approximately the time of the merger declared that (1) the defendant-successor school district would honor the current contracts between the predecessor school district and its teachers, and (2) at expiration of those contracts, the teachers of the predecessor school district would stand on equal footing with, and be treated the same as, the successor school district's own teachers. Throughout that school year, the

plaintiff encountered a "continuing series of difficulties with the principal of the school" where the plaintiff taught. *Id.* at 387. Consequently, the principal did not recommend plaintiff's re-employment; and the board of the defendant school district endorsed non-renewal of plaintiff's contract. The plaintiff was granted an appearance before the board, but the board denied his request for reconsideration and sent him a lengthy list of performance deficiencies.

The district court held that (1) the board's procedures satisfied due process requirements, since (2) the plaintiff did not have a property interest which the Fourteenth Amendment would protect. Searching for a state law origin for the plaintiff's claim of de facto property interest, the Court of Appeals found that Texas law does not recognize a de facto tenure from even a lengthy service of successively renewed, one-year contracts. *Id.* at 388. The Court of Appeals affirmed the district court's ruling that the plaintiff had no protectable property interest under state law. *Id.* at 388, 389.

Finally, in *Stewart v. Bailey,* 556 F.2d 281 (5th Cir. 1977) a college teacher was terminated during the life of his one-year contract. The grounds for his termination were insubordination and wilful disobedience of rules and regulations. The plaintiff alleged that his First Amendment right to freedom of speech was denied, that his property interest under state law was impaired without the protections of Fourteenth Amendment procedural due process, and that his liberty interest was infringed by denigration of his good name, reputation, and integrity. However, before his discharge became effective, the plaintiff submitted a letter of resignation effective at a later date. The resignation was accepted. The plaintiff had taken that tactic to enable him "to obtain a favorable job reference." *Id.* at 284. Not until a year later did he file suit.

The Court of Appeals, affirming the district court, found no evidence in the record to support the First Amendment, freedom-

of-speech claim. On the issues of procedural due process to protect a property interest, and pejorative infringement of a liberty interest, the court held that (1) the college had met its initial duty to provide the plaintiff with a due process forum; but, (2) by submitting his resignation for his own advantages, the plaintiff deliberately waived his right to due process and excused the college from any further Fourteenth Amendment obligations. *Id.* at 285–86.

When the present case was begun, plaintiffs claimed a de jure property interest under Fla.Stat. § 112.531 *et seq.,* "The Police Officers' Bill of Rights." Previously, the applicability of that statute to create a property interest for sheriffs' deputies was "an open and undecided question." *Tanner v. McCall,* 425 F.Supp. 257, 258 (M.D.Fla. 1977); *see Schrank v. Bliss,* 412 F.Supp. 28, 41 and nn. 9 and 10 (M.D.Fla.1976). Florida appellate courts have uniformly ruled, however, that Florida sheriffs do not "come within the purview" of Fla.Stat. § 112.-531(2), "absent some other statutory exception to the contrary." *Tanner v. McCall,* 425 F.Supp. at 258, citing *Evans v. Hardcastle,* 339 So.2d 1150, 1151 (2d D.C.A.Fla. 1976); *Johnson v. Wilson,* 336 So.2d 651, 652 (1st D.C.A.Fla.1976). This Court, therefore, held that "plaintiffs in this case, as former deputies sheriff, are not included within the scope of the statutory rights created and conferred" by Fla.Stat. § 112.531 *et seq. Tanner v. McCall,* 425 F.Supp. at 258.

Hence, without considering or prejudicing plaintiffs' claims (and right to establish those claims) of property interests derived from other source . . . the Court struck the allegations and claims of entitlement under Fla.Stat. § 112.531 *et seq.* "as contrary to the decisional law of Florida." *Id.*

Plaintiffs propose that Fla.Stat. § 447.209 of the Public Employees Relations Act ('PERA')[1] creates a de jure property interest in their jobs as deputies. That section, however, rather than conferring a general property interest upon public employees of Florida, expressly reserves to employers the traditional management prerogatives that are involved in operating a business, insofar as they are not exploited (1) to refuse contractually obligatory grievance procedures, or (2) to commit unfair labor practices.

Plaintiffs have no de jure right to continued employment, and the Court now will consider their claims of de facto property interests. Plaintiffs argue that this Court's decision in *Schrank v. Bliss, supra,* found that the former sheriff of the same county had established a de facto expectation of continued employment by means of the system of probationary and permanent employees. 412 F.Supp. at 37, 40–41. That finding, "while firm for the purpose of issuing" a preliminary injunction, was expressly declared to be "tentative and not binding with respect to the court's ruling and final judgment on the merits . . . " *Id.* at 42. *See also Jacksonville Maritime Ass'n v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. 58 (M.D.Fla.1976); *Poe v. Charlotte Memorial Hosp.,* 374 F.Supp. 1302, 1312 (W.D.N.C.1974). *Schrank v. Bliss, supra,* was ultimately dismissed voluntarily by agreement of the parties, and the court never reached the merits of the de facto property-interest claim.

In the present posture of this case, however, the Court can determine the merits of that claim. While plaintiffs' preliminary injunction motion does not permit such a ruling, defendant's summary judgment motion does. Sheriff Bliss, the defendant in *Schrank v. Bliss, supra,* and the incumbent

---

1. Fla.Stat. § 447.209 Provides:

It is the right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons. However, the exercise of such rights shall not preclude employees or their representatives from raising grievances, should decisions on the above matters have the practical consequence of violating the terms and conditions of any collective bargaining agreement in force or any civil or career service regulation.

predecessor of defendant in this case, continues to maintain that the distinction between probationary and permanent deputies under his administration was a merit-monetary one only. Deposition at 5–7. Consistent with his position in *Schrank v. Bliss*, 412 F.Supp. at 41, Sheriff Bliss continues to insist that 'permanent' did not mean that a deputy acquired a tenured status, dischargeable only for cause. Deposition at 7. The Court need not decide what were the legal consequences of being a permanent deputy under Sheriff Bliss. All of the evidence, documents and depositions conclusively reveal the lack of any showing that such a probationary-permanent classifications system, even if it might have created an objective property interest, has been adopted and carried on by Sheriff Bliss' successor, defendant in this case. Additionally, the depositional testimony of all plaintiffs in this case uniformly establishes that their expectations of continued employment were based on their own, personal beliefs. In short, their property interests are subjectively, not non-subjectively, founded. The Court concludes that plaintiffs had no property interests, under Florida law, in their jobs as Lake County Sheriff's deputies. Therefore, no Fourteenth Amendment due process guarantees are required.

*Second Issue:* *Stigmatization—Injury to Reputation, Good Name, and Integrity.*

■ In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court declared that the Fourteenth Amendment will protect a public employee whose constitutional liberties are infringed by his termination, even if he did not have a property interest in his employment that would be protected by the Due Process Clause. *Id.* at 596–99, 92 S.Ct. at 2697–2699, 33 L.Ed.2d at 577–78. The Court explained in further detail that declaration in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There the Court distinguished between mere injuries to ones good name or reputation alone, and an injury to good name or integrity in conjunction with the denial of interests that

enjoy the protection of the Due Process Clause. *Id.* at 706, 709, 710–12, 96 S.Ct. at 1163, 1164, 1165–1166, 47 L.Ed.2d at 416–17, 418, 419–20. Those interests that are guaranteed the protection of fundamental due process are liberty or property interests (1) created by state law or (2) guaranteed by the Bill of Rights "independently of state law;" *Id.* at 710–11 and n. 5, 96 S.Ct. at 1165, and n. 5, 47 L.Ed.2d at 419 and n. 5; and public employment is one property interest that arises from state law. *Id.* 706, 96 S.Ct. at 1163, 47 L.Ed.2d at 416–17. *See Bishop v. Wood*, 426 U.S. at 344 and n. 7, 96 S.Ct. at 2078 and n. 7, 48 L.Ed.2d at 690 and n. 7; *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

The Supreme Court recently reaffirmed that distinction in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471, 481 (1977). Earlier, in *Board of Regents v. Roth, supra,* the Court had discussed that distinction (which was originally stated in *Perry v. Sindermann, supra,* and explained in *Paul v. Davis, supra* ) in connection with a liberty interest in one's reputation, good name, and integrity as it affected the ability to carry on a job or practice a profession. The Court stated in *Board of Regents v. Roth, supra,* that "where a person's good name, reputation, honor, or integrity is at stake" in a decision not to continue his employment, the fundamentals of due process are required. 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59. In fact, as the Court explained, if such a stigmatization had been involved in *Board of Regents v. Roth, supra,* the decision about the necessity for basic due process would have been different, notwithstanding the ultimate absence of a genuine property interest under the relevant state law. *Id.*

■ The upshot of those decisions, with respect to stigmatization, is that one must meet the "stigma-plus" test to assert a claim for fundamental due process under § 1983. *Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977); *Sullivan v. Brown*, 544 F.2d 279, 283–84 (6th Cir. 1976); *Colaizzi v. Walker,* 542 F.2d 969, 973–74 (7th Cir.

1976); *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365–66 (9th Cir. 1976). It is not necessary that a plaintiff ultimately prevail on his claim to a property interest or liberty interest. A plaintiff need only allege the denial of a property or liberty interest that is arguable or putatively plausible under state law or the Bill of Rights, in order to allege as well a federal claim for stigmatization of reputation, good name, or integrity. *See, e.g., Colaizzi v. Walker*, 542 F.2d at 972–74; *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d at 365–66.

In *Paul v. Davis, supra,* and in every decision following it, the plaintiff's federal claim of stigma was denied from the outset, either by dismissal or by summary judgment, because the denial of a plausible property or liberty interest, under state law or the Bill of Rights, was not alleged. In *Sullivan v. Brown*, 544 F.2d 279 (6th Cir. 1976), the internal disciplinary transfer of a teacher did not allege the denial of any property or liberty interest under Tennessee law. *Id.* at 282–83. Hence, the teacher's allegation of stigmatization to her reputation a priori failed to state a federal claim entitled to the protection of fundamental due process. *Id.* at 283–85.

Similarly, in *Moore v. Otero*, 557 F.2d 435 (5th Cir. 1977), a municipal police officer's internal, disciplinary transfer from corporal to patrolman did not allege the denial or any property or liberty interest under the law of Florida or the City of Tampa. *Id.* at 436–37. Thus, the policeman failed as well to state a federal claim for stigmatization that would entitle him to basic due process. *Id.* at 437–38. *See also Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977).

An attorney who had been intemperately and injudiciously denounced in open court by a state judge, in *Dean v. Shirer*, 547 F.2d 227 (4th Cir. 1976) sued the judge under 42 U.S.C. § 1983. Insofar as his claim might have been for the stigma suffered by the juridical slander, it was deficient because of the lack of any arguable property or liberty interest that was threatened. *Id.* at 229.

In *Walker v. Cahalan*, 542 F.2d 681 (6th Cir. 1976), a criminal defendant who had served eighteen years of a life sentence for first-degree murder, obtained post-conviction relief in a Detroit municipal court. The prosecutor, when refused leave to appeal the decision to the Michigan Court of Appeals, decided to nolle prosequi the murder charge. However, when a state senator introduced a bill in the Michigan legislature to compensate the criminal defendant for his years spent in prison, the prosecutor disseminated a letter deploring the notion that the criminal defendant was an innocent man, unjustly imprisoned and deserving restitution. A *Detroit News* columnist wrote a story based on the case and on the prosecutor's letter. The criminal defendant sued the prosecutor and the journalist. The Court of Appeals held that no federal stigmatization claim under § 1983 was alleged because the plaintiff was unable to assert the denial of any property or liberty interest under state law. *Id.* at 683–84.

■ Plaintiffs claim that their discharges by defendant imposed scandalous stigmata upon their reputations and good names; that they are greatly disabled in obtaining new employment as a result of their stigmatization; and that they have not had an opportunity to eradicate it in a forum of fundamental due process. They rely chiefly upon the obligatory certification system, by the State of Florida's Department of Criminal Law Enforcement's Bureau of Standards, in the Division of Standards and Training. In order to become eligible for employment as a law enforcement officer in the state, every candidate must be certified as qualified under the minimum standards of the Bureau, after successfully completing a mandatory, basic course of training. Once a law enforcement employee is no longer employed, the employer must notify the Bureau of Standards which removes the officer's certificate from active status until his re-employment.

In *Schrank v. Bliss*, 412 F.Supp. at 33, 41, this Court found that, for the purposes of enjoining the defendant, the state law enforcement certification system contributed

to a stigmatizing of the plaintiff's good name and reputation. Plaintiffs seek the Court to rule similarly for them. The factual circumstances in *Schrank v. Bliss, supra,* were different, however. Not only was the state bureau of standards notified that the plaintiff was no longer employed, a letter was sent by the defendant informing the bureau that the plaintiff "had been terminated involuntarily for insubordination." *Id.* at 33. Additionally, the defendant had freely heralded to the news media his accusations that the plaintiff had been fired for insubordination and unseemly conduct. *Id.* at 33–34, 41.

In the present case, there have been neither allegations nor evidence of any publicized deprecation of plaintiffs by defendant. Defendant's own position, expressed in his deposition, was that he had no negative evaluation of plaintiffs, but merely replaced them as the act of an employer's discretionary judgment in striving for the greater benefit of the Sheriff's department. Deposition at 67. Moreover, without exception, when asked at deposition, the plaintiffs were unable to point to a single objective instance where their good names, integrity, or reputations have been stigmatized by defendant. The Court concludes that plaintiffs have stated no federal claim, under § 1983, that their good names, reputations, and integrity have been stigmatized. Consequently, they are not entitled to the basic guarantees of Fourteenth Amendment due process for such claims.

*Third Issue*: *Infringement of First Amendment Freedoms— Politically Discriminatory Discharges.*

■■ While the liberties guaranteed by the First Amendment are not absolute, *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547, 558 (1976), they are so fundamental to the freedom of society under the American form of constitutional democracy that any denial of those liberties is subject to strict scrutiny. *Id.* at 362, 96 S.Ct. at 2684, 49 L.Ed.2d at 559; *Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 656–657, 46 L.Ed.2d 659, 713–14 (1976); *NAACP v. Alabama,* 357 U.S. 449, 460–61,

78 S.Ct. 1163, 1170–1171, 2 L.Ed.2d 1488, 1498–99 (1958); *Stevens v. Berger,* 428 F.Supp. 896, 906 (E.D.N.Y.1977). In order to justify abridging or denying First Amendment freedoms, a government must show not only a legitimate governmental interest, but also a compelling and overwhelming need to achieve that interest at the cost of basic liberties, by means that are the least restrictive ones possible. *Kusper v. Pontikes,* 414 U.S. 51, 58–59, 94 S.Ct. 303, 308–309, 38 L.Ed.2d 260, 267–68 (1973); *Williams v. Rhodes,* 393 U.S. 23, 31–34, 89 S.Ct. 5, 10–12, 21 L.Ed.2d 24, 31–33 (1968); *Keyishian v. Board of Regents of SUNY,* 385 U.S. 589, 602–04, 87 S.Ct. 675, 683–684, 17 L.Ed.2d 629, 640–41 (1967); *NAACP v. Button,* 371 U.S. 415, 438–39, 83 S.Ct. 328, 340–341, 9 L.Ed.2d 405, 421–22 (1963); *Bates v. City of Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480, 486 (1960); *NAACP v. Alabama,* 357 U.S. at 464–66, 78 S.Ct. at 1172–1174, 2 L.Ed.2d at 1500–02; *United Public Workers v. Mitchell,* 330 U.S. 75, 95–96, 67 S.Ct. 556, 567–568, 91 L.Ed. 754, 770–71 (1947); *Thomas v. Collins,* 323 U.S. 516, 529–32, 65 S.Ct. 315, 322–324, 89 L.Ed. 430, 439–41 (1945); *Division 241, Amalg. Transit Union v. Suscy,* 538 F.2d 1264, 1266 (7th Cir. 1976); *Stevens v. Berger,* 428 F.Supp. at 906.

■ In *Elrod v. Burns, supra,* the Supreme Court settled that the highly valued freedoms of the First Amendment remain inviolable in public employment situations. The plaintiffs in *Elrod v. Burns, supra,* were Republican employees of the Cook County, Illinois Sheriff's Office, not protected by an objective tenure of employment such as civil service. They were all terminated or threatened with termination by a successor sheriff, a Democrat. There was no question that the spoils system of partisan politics was the cause. The Supreme Court held that, regardless of the existence of a property right in one's job under state law, a public employee who is neither in a policy-making nor in a confidential capacity may not be discharged or threatened with discharge, solely because of his political beliefs and affiliations. 427

U.S. at 373, 96 S.Ct. at 2689, 49 L.Ed.2d at 565, and 427 U.S. at 375, 96 S.Ct. at 2690, 49 L.Ed.2d at 566 (Stewart & Blackmun, JJ., concurring). Such politically discriminatory discharges violate the rudimentary liberties of the First Amendment, to freely believe, speak, and affiliate as one chooses.

The Supreme Court's decision in *Elrod v. Burns, supra,* was consistent with earlier pronouncements by the Court concerning fundamental constitutional freedoms. In *Perry v. Sindermann, supra,* the Court, while finding no de jure property interest for the college teacher under Texas law, declared:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." [Citations omitted] Such interference with constitutional rights is impermissible.

408 U.S. at 597, 92 S.Ct. at 2697, 33 L.Ed.2d at 577, quoted in *Elrod v. Burns,* 427 U.S. at 359, 96 S.Ct. at 2682, 49 L.Ed.2d at 557.

Moreover, the Supreme Court's decision in *Elrod v. Burns, supra,* is significant for its reliance upon, and consistency with, *Illinois State Employees Union v. Lewis,* 473 F.2d 561 (7th Cir. 1972). The decision in *Elrod v. Burns, supra,* was a judgment and opinion by three justices, with a special concurrence by two other justices; but Mr. Justice Stevens did not participate in that decision. However, Mr. Justice Stevens, as a Seventh Circuit Judge, authored the opinion in *Illinois State Employees Union v.*

*Lewis, supra,* with which the Supreme Court's decision in *Elrod v. Burns,* 427 U.S. at 357, 366, 368, 96 S.Ct. at 2681, 2686, 2687, 49 L.Ed.2d at 556, 561, 562 is in accord.

In *Illinois State Employees Union v. Lewis, supra,* ordinary, non-policy-making non-confidential employees of Illinois Secretary of State's Office were terminated when the incumbent Secretary of State, a Democrat, died and the Republican governor appointed a Republican successor. The district court had granted summary judgment for the defendant. 473 F.2d at 565. Mr. Justice Stevens formulated the issue as whether a non-policy-making public employee "may be discharged for refusing to transfer his political allegiance from one political party to another." *Id.* at 566. He held that the "plaintiffs have alleged an impermissible basis for their discharge," *id.* at 573, and "are entitled to an opportunity to prove their case." *Id.* at 576. The district court's entry of summary judgment for the defendant was reversed as erroneous, inasmuch as the record at that point did not

> . . . support a factual finding that no plaintiff was dismissed for an impermissible reason or the legal conclusion that [the] defendant was justified in prescribing active support of the Republican Party as a condition of continued public employment. *Id.* at 576.

As a result of the Supreme Court's decision in *Elrod v. Burns, supra,* therefore, there is no doubt that non-confidential, non-policy-making public employees are protected against being harassed or discharged solely because of exercising First Amendment freedoms, such as political beliefs, expressions, and associations. *Norbeck v. Davenport Community School Dist.,* 545 F.2d 63, 67 (8th Cir. 1976); *Division 241, Amalg. Transit Union v. Suscy,* 538 F.2d at 1266; *Stevens v. Berger,* D.C., 428 F.Supp. 896, 906 (E.D.N.Y.1977); *Nader v. Schaffer,* 417 F.Supp. 837, 845 (D.Conn.1976); *Barton v. City of Eustis,* 415 F.Supp. 1355, 1359 (M.D.Fla.1976). Those First Amendment freedoms are protected even if a public employee does not have tenure or some other property right in his job under state law.

In *Gabriel v. Benitez,* 390 F.Supp. 988 (D.P.R.1975), the plaintiff, a field coordinator within the Puerto Rico Department of Education, found the terms and conditions of her employment substantially changed, culminating in a decision not to renew her contract, five months after a political change in the Secretary of Education. The district court found that the plaintiff had met her burden to show, even by circumstantial evidence, that her termination was prompted solely because of her political affiliation. *Id.* at 992. Any lack of contractual tenure or other property right in her job was immaterial to the protection of her First Amendment freedoms. *Id.* The First Circuit affirmed the district court's finding of politically discriminatory animus, *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882, 885 (1st Cir. 1976), but at the same time rejected the same First Amendment protection for a different, policy-making employee of the Puerto Rico Department of Education. *Id.*

The plaintiff in *Lasco v. Koch,* 428 F.Supp. 468 (S.D.Ill.1977), had been an executive, civil service employee at the Illinois Veterans' Home since 1973. Beginning in 1975 the plaintiff experienced changes in his job conditions and duties, with the final result that his job alone, out of 435 positions, was to be abolished. The plaintiff had supported a different Democratic primary candidate than the defendants. In late 1976, after receiving critical reports in his personnel file, the plaintiff was notified that he was going to be laid off because of reorganization. The district court found that the plaintiff had presented a prima facie case of political discrimination sufficient to warrant a preliminary injunction. *Id.* at 475. But the court stayed further exercise of its jurisdiction in the case pending review by the state civil service commission that had primary jurisdiction over the plaintiff's job loss. *Id.*

In the present case, plaintiffs have the burden to show, both ultimately on the merits, and prima facie on their preliminary injunction motion, that they were not continued in their jobs because of political discrimination. *Elrod v. Burns,* 427 U.S. at 374, 96 S.Ct. at 2690, 49 L.Ed.2d at 565–66; *Illinois State Employees Union v. Lewis,* 473 F.2d at 567; *Lasco v. Koch,* 428 F.Supp. at 475; *Gabriel v. Benitez,* 390 F.Supp. at 992. However, plaintiffs have not met their burden. Defendant has indicated that he did not know or consider the political allegiances of plaintiffs or any other employees of the sheriff's department when he decided to retain some and replace others. Deposition at 41, 55, 63. Although plaintiffs supported the candidacy of the incumbent sheriff, so did many other employees, who were retained by defendant. Hence, the fact of plaintiffs' uniform political support alone cannot show any infringement of their First Amendment freedoms by defendant. Far from showing anything additional, plaintiffs have indicated that defendant did not inquire, and discouraged voluntary statements, about their political stances in the preceding election. The Court concludes that plaintiffs have not met their burden to show a prima facie case of politically discriminatory animus by defendant.

Furthermore, even if plaintiffs had demonstrated a prima facie case of political discrimination in defendant's decision not to continue their employment, they would need to show more in order to prevail. Plaintiffs must show that any impermissible infringement of protected First Amendment freedoms (such as political beliefs, expression, and association) was the primary and dominant cause of their terminations. In short, plaintiffs must show that, even if defendant wished to curtail their protected First Amendment freedoms, apart from that wrongful reason, there were no other good reasons that independently justified their discharges.

In *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), an untenured teacher claimed that a refusal to rehire him was motivated by the defendant's antipathy to the teacher's freedom of speech. The teacher had telephoned a local radio station, reporting an intra-school memorandum

about a teacher's dress code. The information was broadcast as a news item. When the school board decided not to rehire the teacher, it listed the radio news-information incident as one of the reasons. However, the teacher had repeatedly become embroiled in fractious quarrels with other teachers and school employees, and had used an obscene gesture to female students who disobeyed his order as lunchroom supervisor. The obscene gesture was also listed as a reason not to rehire the teacher. The Supreme Court acknowledged that the teacher's telephone call was constitutionally protected freedom of expression. *Id.* at 285, 97 S.Ct. at 575, 50 L.Ed.2d at 482. The Court held, however, that even if the teacher's First Amendment speech was a substantial cause for not being rehired, that would not automatically mean that the refusal to rehire him violated the federal Constitution. *Id.* at 284–286, 97 S.Ct. at 574–575, 50 L.Ed.2d at 482–83. The proper causation test (1) distinguishes between (a) results caused by violations of constitutional rights and (b) results "not so caused," and (2) avoids entailing "undesirable consequences not necessary" to protect those rights. *Id.* at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 483–84.

Following the Supreme Court's analysis in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, supra,* the district court in *Lasco v. Koch,* 428 F.Supp. 468 (S.D.Ill. 1977) enjoined preliminarily the plaintiff's layoff, but stayed further action pending the outcome of state administrative proceedings. *Id.* at 475. The defendants contended that the plaintiff's layoff resulted from a reorganization justified by legitimate business necessity. *Id.* at 475, 476. If that were so, then despite the political discord between the defendants and the plaintiff, his layoff might not have been a violation of his First Amendment rights. *Id.* at 476. On the other hand, there was the possibility that the reorganization was a mere sham to disguise politically animated infractions of the plaintiff's constitutional rights. *Id.*

Recently, the Fifth Circuit, in *Garza v. Rodriguez,* 559 F.2d 259 (5th Cir. 1977),

upheld the discharge of a Texas juvenile probation officer who had no property interest in his job under state law. The probation officer had been arrested for intoxication and behaved abusively. Later, the probation officer indicated his intention to sue the police, and shortly thereafter he was fired. He sued the head of the department where he had been employed. He claimed that his termination was because of his threat to sue the police, and therefore was a discharge "for the exercise of his constitutional rights." *Id.* at 260. There had also been evidence presented to the district court that amounted to "just cause to terminate [the plaintiff]." *Id.* The Fifth Circuit applied the Supreme Court's causation test in *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, supra,* to determine if the plaintiff's discharge, which was based on justified as well as impermissible cause, constituted a violation of fundamental constitutional rights. *Id.* at 261–62. The Court of Appeals concluded that the decision to terminate the plaintiff had been premised on an independently justifiable ground, so that joining a constitutionally forbidden reason as another ground did not taint the good cause for the discharge. *Id.*

Plaintiffs in the present case have not demonstrated anything near a likelihood (1) that they were replaced for politically discriminatory reasons, or (2) that if they had been, there were no other, independent and legitimate reasons to justify replacing them. Defendant, meanwhile, maintains that his decision to replace plaintiffs was based on reasons that, consistent with his campaign promise, would achieve a better operating sheriff's department. Whether those reasons are sound is not within the province of this Court to determine, so long as they are arguably legitimate and not a mere pretext for violating basic constitutional freedoms. Plaintiffs have not established a prima facie case of such pretense that would entitle them to a preliminary injunction.

 On the other hand, there exists a genuine, material question of fact concern-

ing plaintiffs' allegation that they were not retained in their jobs because of their political views. *Perry v. Elrod,* 436 F.Supp. 299, 304 (N.D.Ill.1977). The Court cannot decide that factual question on a summary judgment motion, and the motion must be denied with respect to this one issue. Additionally, whether plaintiffs Tanner and Campbell, as chief deputy sheriff and secretary to the sheriff, respectively, were policy-making or confidential employees, and therefore not protected in their jobs by the First Amendment freedoms, appears to be a mixed question of law and fact. · *Elrod v. Burns,* 427 U.S. at 367–68, 96 S.Ct. at 2686–2687, 49 L.Ed.2d at 562; *Norbeck v. Davenport Community School Dist.,* 545 F.2d at 67; *Rivera Morales v. Benitez de Rexach,* 541 F.2d at 884–85; *Rosenberg v. Redevelopment Authority of Phila.,* 428 F.Supp. 498, 500–01 (E.D.Pa.1977); *Nader v. Schaffer,* 417 F.Supp. at 845. Insofar as the factual facet of that question involves an evidentiary determination of the duties, responsibilities, terms and conditions of a particular job, it is material to the issue of First Amendment protection and requires further evidence. Summary judgment, therefore, is unjustified and improper in the present posture of this case.

*Preliminary Injunction: Four Criteria*

 A preliminary injunction is an extraordinary equitable remedy. *Sampson v. Murray,* 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166, 187 n. 68 (1974); *Canal Authority of the State of Fla. v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974); *Lasco v. Koch,* 428 F.Supp. at 475; *Jacksonville Maritime Ass'n, Inc. v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. 58, 64 (M.D.Fla.1976); *Jets Services, Inc. v. Hoffman,* 420 F.Supp. 1300, 1302 (M.D.Fla.1976); *Schrank v. Bliss,* 412 F.Supp. 28, 34 (M.D.Fla.1976). A preliminary injunction is warranted only if four criteria are established: (1) substantial likelihood of plaintiffs' eventual success on the merits; (2) irreparable injury because of the unavailability of an adequate remedy at law; (3) the plaintiffs' threatened injury outweighs possible injury to the defendant;

and (4) no disservice to the public interest from issuance of an injunction. *Granny Goose Foods, Inc. v. Local 70, Brotherhood of Teamsters and Auto Truck Drivers,* 415 U.S. 423, 441, 443, 94 S.Ct. 1113, 1125, 1126, 39 L.Ed.2d 435, 451, 452 (1974); *Sampson v. Murray,* 415 U.S. at 84 n. 53, 94 S.Ct. at 950 n. 53, 39 L.Ed.2d at 183 n. 53 (1974); *Louisiana Consumer's League, Inc. v. State Bd. of Optometry Examiners,* 557 F.2d 473, 474 (5th Cir. 1977); *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir. 1976); *Buchanan v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir. 1975); *Canal Authority of State of Fla. v. Callaway,* 489 F.2d at 572; *Blackshear Residents Organiz. v. Romney,* 472 F.2d 1197, 1198 (5th Cir. 1973); *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir. 1972); *Southwestern Bell Teleph. Co. v. CWA,* 454 F.2d 1333, 1334, 1337 (5th Cir. 1972); *Jacksonville Maritime Ass'n v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 64; *Jets Services, Inc. v. Hoffman,* 420 F.Supp. at 1305; *Schrank v. Bliss,* 412 F.Supp. at 34. The burden is upon plaintiffs to satisfy these four criteria. *Hillsboro News Co. v. Tampa,* 544 F.2d 860, 861 (5th Cir. 1977); *Penn v. San Juan Hosp.,* 528 F.2d 1181, 1185 (10th Cir. 1975); *Canal Authority of State of Fla. v. Callaway,* 489 F.2d at 572; *Jacksonville Maritime Ass'n v. Local 1408–A, Internat'l Longshoremen's Ass'n,* 424 F.Supp. at 65; *Jets Services, Inc. v. Hoffman,* 420 F.Supp. at 1305. The evidence presented for each of those criteria is balanced by the Court on a sliding-scale analysis: a much stronger showing on one or more of the necessary factors lessens the amount of proof required for the remaining factors. *State of Texas v. Seatrain Internat'l S.A.,* 518 F.2d 175, 180 (5th Cir. 1975); *Siff v. State Democratic Exec. Committee,* 500 F.2d 1307, 1309 (5th Cir. 1974); *Jacksonville Maritime Ass'n v. Local 1408–A, International Longshoremen's Ass'n,* 424 F.Supp. at 65; *Jets Services, Inc. v. Hoffman,* 420 F.Supp. at 1305–06; *Schrank v. Bliss,* 412 F.Supp. at 34.

*1. Likelihood of Success on the Merits*

The Court has already held that plaintiffs have failed to show that it is more likely

than not that defendant replaced them as deputies sheriff for politically discriminatory reasons; and that such replacement constituted a violation of their First Amendment freedoms because it was prompted only by political discrimination. Consequently, plaintiffs have not satisfied this criterion for a preliminary injunction.

### 2. *Irreparable Injury*

■ Because the Court has already held that plaintiffs have not demonstrated a likelihood of eventual success on their claim that their First Amendment rights have been denied, the fact that plaintiffs might be sustaining irreparable losses and injury cannot justify issuing a preliminary injunction. The fact of irreparable loss or injury alone, without any arguable likelihood to succeed legally on the merits of one's claims, could warrant an injunctive remedy (or any other remedy) only on the theory that for every wrong and ill that occurs there should be a legal remedy fashioned by the Court. Regardless of whether such a legal theory is viable in courts of general jurisdiction, such as state courts, that theory is wholly inconsistent with the strictly limited jurisdiction of federal courts. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 278, 97 S.Ct. at 571, 50 L.Ed.2d at 478; *City of Kenosha v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109, 115 (1973); *Louisville and N. R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126, 127 (1908); *Cameron v. Hodges,* 127 U.S. 322, 326, 8 S.Ct. 1154, 1156, 32 L.Ed. 132, 134 (1888); *Mansfield, C. & L. M. Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462, 464 (1884); *Turner v. President, Directors and Co. of Bank of Amer.,* 4 Dall. 7, 8, 1 L.Ed. 718 (1799); *Morrison v. Morrison,* 408 F.Supp. 315, 316 (N.D.Tex.1976). Consequently, the Court holds that, in the absence of plaintiffs' showing that they are likely to succeed on their legal claims, any losses or injuries sustained by them, however irreparable, do not justify issuing a preliminary injunction.

### 3. *Plaintiffs' Injury Outweighs Defendant's Injury*

Because the fact of plaintiffs' possible injuries alone cannot warrant a preliminary injunction, there is no need for the Court to consider or balance any possible injury to the defendant from an injunction.

### 4. *No Disservice to the Public Interest*

Because the plaintiffs have not shown that they are entitled to a preliminary injunction, the Court need not consider whether a preliminary injunction would result in a disservice to the public interest. Instead the Court holds, that where there is no clearly demonstrated legal justification for the Court to exercise its jurisdiction and grant relief, the public's interest under the national system of federalism would be ill-served by failing to observe the constitutionally-founded, limited jurisdiction of federal courts.

### CONCLUSION

In conclusion, the Court holds that plaintiffs have not shown themselves entitled to a preliminary injunction; and that defendant has demonstrated his right to summary judgment, as a matter of law and in the absence of any genuine factual dispute, concerning plaintiffs' first two claims. Consequently, it is now

ORDERED:

1. Plaintiffs' motion for a preliminary injunction is denied.

2. Defendant's motion for summary judgment on plaintiffs' first two claims, concerning procedural due process for property interest in their jobs, and stigmatization of their good names and reputations, is granted.

3. Defendant's motion for summary judgment on plaintiffs third claim, concerning politically discriminatory discharge violating First Amendment freedoms, is denied.