Esther Pedroza **GABRIEL**, Plaintiff,

v.

Celeste **BENÍTEZ** et al., **Defendants.**

Civ. No. 594–73.

United States District Court,
D. Puerto Rico.

March 21, 1975.

Robert E. Schneider, Jr., Santurce, P. R., for plaintiff.

Rieckehoff, Calderon, Rosa-Silva & Vargas, Hato Rey, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

This cause is before the Court pursuant to Plaintiff's action brought under Section 1983 of the Civil Rights Act, Title 42, United States Code and its jurisdictional counterpart, Title 28, United States Code, Section 1343, against Defendant Celeste Benítez de Rodríguez. Plaintiff seeks monetary damages alleging that Defendant, while serving as Secretary of Education of Puerto Rico, failed to reappoint her to the position she held in the Department of Education during the fiscal year 1972–73, only because of Plaintiff's political affiliation in violation of the United States Constitution.

Originally, Plaintiff also prayed for injunctive relief against Defendant, then still Secretary of Education, and later, when Defendant resigned from that position, Plaintiff amended her complaint to join the new Secretary of Education, Mr. Ramón A. Cruz, as Defendant. At the pretrial held in this case, Plaintiff voluntarily dismissed this prayer for relief and her action against this latter Defendant. Thus, the case is now an action against Defendant Celeste Benítez de Rodríguez, in her personal capacity, and only for monetary damages.

From the evidence presented at the trial, including pretrial stipulations, it appears that prior to July 1, 1972, Plaintiff was employed by the Department of Education of the Commonwealth of Puerto Rico, and by the University of Puerto Rico in various teaching and teaching-related capacities. In the period immediately prior to said date she was employed by the University of Puerto Rico while on leave of absence from her permanent position as a Teacher of secondary English in the Eastern San Juan School District.

On or about July, 1972 Plaintiff was recruited by the then Assistant Secretary of Education for the Extension Education Program of the Commonwealth of Puerto Rico, Víctor M. Rivera Morales, to a transitory or temporary position in the Adult Education Program as Field Coordinator of the Staff Development Project for Puerto Rico. This program is financed by a grant from the U. S. Department of Health, Education and Welfare and is aimed at the development of staff capability for the training of adult educators. This program was a three-year program and this fact was informed to Plaintiff by Mr. Rivera Morales before she accepted her position. Plaintiff testified that she agreed to leave her position at the University because it was a three-year program, and this fact was known to Mr. Rivera Morales.

Notwithstanding this situation, Plaintiff's appointment letter dated August 23, 1972 specifically stated that her appointment was through June 30, 1973. The appointment document makes no mention of any right to reappointment nor is there any reference in the same to the program to which she was assigned, nor to the duration of the same. Some time after her appointment to the position in question, Plaintiff was given a copy of a revised proposal of the program, which shows that the same is to have a three-year duration. In fact, the funding agency approved grants to finance the program for the three-year period and it has continued in operation after Plaintiff's departure.

The parties stipulated at the pretrial that Plaintiff's position in this program was that of a non-tenured public employee under applicable Commonwealth

Laws,[1] and as such her employment in that position was subject to termination at will and without cause.[2]

As a result of the elections that took place in November, 1972 there was a change in administration in Puerto Rico. In January, 1973 Defendant Celeste Benítez de Rodríguez was named Secretary of Education of Puerto Rico. It has been stipulated that at all times pertinent hereto she was and still is a member of the Popular Democratic Party and actively participated in the 1972 campaign of the said Party.

Shortly after Defendant became Secretary of Education, Mr. Rivera Morales was replaced first by Félix Villar Banc, in a temporary capacity, and then by Evaristo Eleutice, who took office in late February or March, 1973. Mr. Eleutice became Plaintiff's immediate supervisor in lieu of Mr. Rivera Morales. Thereafter, Plaintiff was not invited to attend the periodic staff meetings that were held in her section and which she attended while Mr. Rivera Morales was Assistant Secretary. An additional change in her working rules took place in that she was not allowed to communicate directly with the program directors in the mainland, as she had done under Mr. Rivera Morales, but had to do so through Mr. Eleutice or Mr. Villar Banc.

On May 10, 1973 Plaintiff, apparently sensing that all was not well, requested reinstatement to her former position as a teacher of English.

Plaintiff's suspicions in this respect proved well-founded as on May 31, 1973 she was notified in writing by Defendant of her decision not to reappoint her after the expiration of her appointment on June 30, 1973. This letter gave no reasons for this decision nor was a hearing or opportunity to challenge the same given to Plaintiff.

Prior to this Plaintiff never received any notice or complaint from the project director or from her supervisors regarding her performance. In fact, Mr. Rivera Morales testified that up to the time that he left, Plaintiff's work was "excellent."

Plaintiff ceased in her employment as Field Coordinator on June 30, 1973. On July 1, 1973 Defendant hired Mrs. Carmen M. Morales Hernández to replace Plaintiff. Mrs. Morales Hernández was also designated Field Coordinator, but was classified as an Executive Director I with a monthly salary of $930 as compared to Plaintiff who was classified as an Executive Director II at a salary of $1,030 per month.

Plaintiff's replacement is a member of the Popular Democratic Party as compared with Plaintiff, who is a member of the New Progressive Party. Although Plaintiff's political affiliation was known by some persons at the central office of the Department of Education, where she worked and where Defendant's office is located, there is no direct proof that this was known by Defendant.

The issues raised by the non-renewal of a government employment contract deal with questions of both procedural and substantive due process.

For a governmental employee to be entitled to procedural due process as regards the non-renewal of his employment contract (that is, for such an employee to be entitled to a hearing wherein he is informed of the grounds for his non-retention and given an opportunity to challenge their sufficiency) he must show that the decision not to rehire him somehow deprived him of an interest in "liberty" or that he had a

---

1. This stipulation has a basis in law. See 3 L.P.R.A. § 648; Pastor Lozada v. César S. Canals, Supreme Court of Puerto Rico, Bar Association Advanced Sheets, 74–11.

2. This of course, cannot include discrimination for reasons proscribed by the United States Constitution in the appropriate cases. Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Illinois State Employees Union, etc. v. Lewis, 473 F.2d 561 (1972); cert. den. 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973); Burns v. Elrod, 509 F.2d 1133 (CA 7, 1975), or the Commonwealth Constitution, in the appropriate forum, Báez v. Rivera, 100 P.R.R. 982 (1972).

"property" interest in continued employment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 28 L.Ed.2d 526 (1971). Absent any charges against the employee, or stigma, or disability foreclosing other employment, the non-retention *per se* is not tantamount to a deprivation of "liberty". Board of Regents v. Roth, supra, at page 573, 92 S.Ct. 2701. It is clear that this situation is not presented herein.

■■ To have a "property" interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Board of Regents v. Roth, supra, at page 577, 92 S.Ct. 2701. Although mere subjective "expectancy" in continued employment does not create a property interest protected by procedural due process, the existence of rules and understandings, promulgated and fostered by state officials may justify an employee's legitimate claim of entitlement to continued employment absent "sufficient cause." Perry v. Sindermann, supra, 408 U.S. at page 602–603, 92 S.Ct. 2694.

■ The facts surrounding the appointment of Plaintiff created more than a mere subjective expectancy of continued employment. Her immediate superior, who handled the details of her hiring, informed her that the program for which she was being hired was to have three years' duration. He knew at that time that she would have to leave her employment with the University of Puerto Rico. The fact that Plaintiff's appointment letter stated that her appointment was through June 30, 1973 is no more dispositive of the matter than it was in Perry v. Sindermann, supra, wherein Plaintiff there was hired for a series of one-year written contracts. This is so particularly when we consider the testimony of Mr. Rivera Morales to the effect that the one year appointment was merely the "administrative way of doing things for allocation of funds, although the program might be for three years."

In concluding that Plaintiff was entitled to procedural due process, and thus to a statement of reasons for non-renewal and a hearing, we are deciding a partially moot issue in view of the fact that Plaintiff is no longer seeking reinstatement. This may be of some relevance, however, to other issues to be decided in this case.

■■ The issues are related to the questions of substantive due process that are raised by Plaintiff's non-renewal, irrespective of whether she had an expectancy that entitled her to procedural due process. Plaintiff's lack or existence of a contractual or tenure right are immaterial to her constitutional right to free speech and association. Perry v. Sindermann, supra, at page 597–598, 92 S.Ct. 2694. On page 597, 92 S.Ct. page 2697 the Court said:

"For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—*especially, his interest in freedom of speech.* For if the government could deny a benefit to a person because of his constitutionally protected speech or *association,* his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' . . . Such interference with constitutional rights is impermissible." (Emphasis supplied).

In our opinion discrimination for political reasons is clearly within such proscription. Illinois State Employees Union, etc. v. Lewis, supra; Burns v. Elrod, supra.[3] And refusal to renew even

---

3. We are not unaware of a separate line of cases as expounded by Alomar v. Dwyer, 447 F.2d 482 (CA 2, 1971), cert. den. 404 U.S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972).

a temporary contract cannot be sustained if the state official uses political affiliation as the basis for such action.

Our inquiry is therefore narrowed to a determination of whether Plaintiff has met its burden of proof in showing that Defendant failed to renew her contract solely by reason of Plaintiff's political affiliation.

█ It is well established that Civil Rights actions require proof of defendant's personal involvement in the action against the alleged discriminatee and that the doctrine of respondeat superior is not available for said purposes. Lathan v. Oswald, 359 F.Supp. 85; (D.C. N.Y., 1973); Bennett v. Gravelle, 323 F. Supp. 203 (D.C.Md., 1971), aff'd 451 F. 2d 1011 (CA 4, 1971), cert. den. 407 U. S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972).

This doctrine however is not contravened herein in that it was Defendant's direct action that effectuated Plaintiff's non-renewal.

We must carefully consider however the effect, if any, of Plaintiff's failure to bring direct proof of Defendant's knowledge of Plaintiff's political affiliation. A related problem is that there is also no direct proof that Defendant acted from political motivation.

█ If direct proof of such matters were an essential element of discrimination cases, there would be few if any successful civil rights cases in the books. We believe, however, that such is not the law, Avery v. Georgia, 345 U. S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); and that circumstantial evidence is as valid in civil rights cases as it is in any other case before the law. By circumstantial evidence we mean of course proof of a chain of circumstances pointing to the existence or non-existence of certain facts. Wilkins v. Hogan, 425 F.2d 1022 (CA 10, 1970); Ezzard v. U. S., 7 F.2d 808, 810 (CA 8, 1925); The Robert Edwards, 19 U.S. (6 Wheat.) 187, 198, 5 L.Ed. 238 (1821).

█ The chain of circumstances herein clearly point to the missing link which is, Defendant's political motivation in her non-renewal of Plaintiff's contract: Plaintiff is hired for a three year program; she performs her work without complaint from her supervisors; Defendant, a prominent member of the Popular Democratic Party, becomes Secretary of Education; thereafter Plaintiff, a member of the New Progressive Party, is eliminated from attendance at staff conferences and is not allowed to communicate with her program directors in the mainland; Defendant "terminates" [4] Plaintiff's employment as of June 30, 1973 and the day after, hires a member of her own party to replace Plaintiff; no reasons are given to Plaintiff for her "termination"; the three year program continues in full force and effect after Plaintiff's departure.

It would require stretching of our credulance to the breaking point to ascribe this sequence of events to mere coincidence. One can hardly resist but to say that there is something "rotten in [this] state" of affairs.[5]

At the very least the above proof shifted the burden of going forward onto Defendant. Defendant did not meet this obligation.

Although we are not bound by the decisions of the Supreme Court of Puerto Rico on questions related to Federal Law, the decision in the case of Báez Cancel et al v. Santos Rivera Pérez, et al, 100 D.P.R. 982 (1972), contains persuasive arguments and sound logic on the issues here at hand. In that case the Court set aside the discharge of some irregular municipal employees, holding that their discharge was based on political discrimination, notwithstanding that under Municipal Law a

---

4. Language used by Defendant in her letter to Plaintiff (See Plaintiff's Exhibit 14).

5. "Something is rotten in the state of Denmark", William Shakespeare, *Hamlet*, Act I, Scene iv, 90.

mayor has a discretionary right to substitute such employees at will. The Court therein held that where employees of one political party are discharged, and thereafter immediately substituted with other employees belonging to a different political party, which happens to be the same party as that of the appointing mayor, a "strong presumption" is raised that the discharge took place by reason of political discrimination which is proscribed also by the Commonwealth's Constitution.

Thus we hold that the uncontradicted circumstantial evidence in this case shows that Defendant's "termination" or non-renewal of Plaintiff was politically motivated, and proscribed by the provisions of 28 U.S.C. 1983 and the Constitution of the United States.

In view of the above a hearing shall be set for April 24, 1975 at 9:00 A.M., to determine the issue of damages, which shall not include exemplary damages.

It is so ordered.