[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before the Court is Defendants'[1] Super. Ct. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff Suzanne C. Courtemanche's ("Plaintiff") complaint. The complaint at issue, which arises out of Plaintiff's interest in a business trust, is for (1) breach of contract, (2) declaratory judgment (3) breach of fiduciary duty and an accounting, and (4) breach of the covenant of good faith and fair dealing. The Defendants seek to dismiss the complaint in its entirety. The following is a summary of the factual allegations contained in Plaintiff's complaint.
 I. THE COMPLAINT A. Facts
Plaintiff and the individual defendants (Robert V. Bibbo, Charles J. Natale, Christopher J. Rein, Glenn T. Almquist, and Peter Nangeroni) own shares in a Massachusetts Business Trust entitled Environmental Science Services Trust ("the Trust"). The Trust is the sole shareholder of stock in ESS Group, Inc. ("ESS"),[2] a Delaware corporation with a principal place of business in East Providence. Bibbo and Natale are also the trustees of the Trust.
The Trust was established by a Declaration of Trust filed with the Massachusetts Secretary of State in June of 2000. Plaintiff and the individual defendants (except for Nangeroni, who became a shareholder in 2002) also entered into a Shareholders' Agreement in June of 2000, setting forth the terms of their ownership of shares in the Trust. The Shareholders' Agreement, among other things, requires the Trust to purchase a shareholder's shares when he or she retires from ESS or voluntarily terminates employment. The purchase price "shall be the Fair Market Value of the Shares calculated in accordance with Exhibit B" of the Shareholders' Agreement as of the date of the retirement or voluntary termination.
On January 2, 2001, the shareholders (including the Plaintiff) amended Exhibit B, revising the method of calculating the purchase price. On January 7, 2003, Plaintiff voluntarily terminated her employment. In March of 2003, the Trust sent written notice to Plaintiff of its intention to purchase her shares. The notice did not specify the purchase price, as the Trust's financial statements apparently had not been finalized. Per the requirements of the Shareholders' Agreement, the purchase was required to take place on or before July 25, 2003.
Pursuant to the Declaration of Trust, which permits inspection of books and records pursuant to Delaware law, Plaintiff attempted to examine the books to determine the purchase price. The Trust requested that the Plaintiff, her accountant, and her attorneys execute confidentiality agreements, but it nevertheless failed to disclose all documents. The Trust subsequently offered to purchase Plaintiff's shares on or before July 25, 2003; however, it did not have audited financial statements available prior to that date, was unable to determine a proposed purchase price, and refused to permit Plaintiff to inspect records. Thus, the closing was postponed indefinitely.
In September of 2003, the Trust proposed to purchase Plaintiff's shares for $537,573.38. In October of 2003, the Trust notified Plaintiff that it was engaging new counsel, which delayed further discussions on the purchase price and the disclosure of documents. By letter dated November 11, 2003, Plaintiff wrote to the Trust's new attorney and requested additional financial documents believing the value was higher than $537,573.38. In December of 2003, the Trust responded, alleging that errors existed in Exhibit B to the Shareholders' Agreement, which calculates the purchase price, and revealed that the defendant shareholders (without Plaintiff's participation) revised (on November 25, 2003) the provisions of the Shareholders' Agreement on calculating the purchase price of shares. Natale purportedly acted on Plaintiff's behalf to execute documents as her attorney-in-fact pursuant to an authorization in the Shareholders' Agreement. The revised formula reduced the purchase price for Plaintiff's shares to $281,455.91.
 B. The Caption
Plaintiff subsequently filed a complaint with this Court. The caption of the complaint, which Defendants raise as an issue, reads:
 Suzanne C. Courtemanche, Plaintiff v. Robert V. Bibbo and Charles J. Natale, Jr., as Trustees of the Environmental Science Services Trust, Robert V. Bibbo, Individually, Charles J. Natale, Individually, Christopher J. Rein, Individually, Glenn T. Almquist, Individually, and Peter Nangeroni, Individually, Defendants.
As defendants in their individual capacities, the caption names Bibbo, Natale, Rein, Almquist, and Nangeroni. It also names Bibbo and Natale as trustees of the Trust. The caption does not cite the Trust itself as a defendant but it is, in fact, named as a defendant in paragraph "4." of the complaint, under the subheading "Parties and Jurisdiction."
 C. Relief Sought
First, Plaintiff seeks relief for breach of contract. Plaintiff claims that Defendants breached the Shareholders' Agreement by (1) revising it to reduce the purchase price of her shares (2) refusing to purchase her shares pursuant to the previous formula, and (3) failing to make records available for inspection. Plaintiff next seeks a declaratory judgment, declaring void the November 25, 2003 amendment to the Shareholders' Agreement. Third, Plaintiff seeks relief for "Breach of Fiduciary Duty/Accounting," contending that Defendants, as shareholders and trustees, owed Plaintiff a fiduciary duty which they breached by failing to pay her for her shares and by engaging in "self dealing" by attempting to revise the Shareholders' Agreement to deprive her of the purchase price to which she is entitled. Plaintiff's final count in the complaint is for "breach of the covenant of good faith and fair dealing." According to Plaintiff, the Defendants breached this implied covenant by the "various breaches of contract, self dealing, breaches of fiduciary duty and other wrongful conduct." Plaintiff specifically mentions Defendants' altering of the payment structure to reduce the purchase price of Plaintiff's shares, and Natale acting to revise the Shareholders' Agreement as Plaintiff's attorney-in-fact.
 II. STANDARD OF REVIEW
Presently, Defendants seek to dismiss Plaintiff's complaint in its entirety. Relying primarily on four bases, Defendants filed a motion and memorandum of law pursuant to R.I. Super. Ct. R. Civ. P. 12(b)(6). In considering such a motion, it is well-established that the "sole function of [this Court] is to test the sufficiency of the complaint." Martin v.Howard, 784 A.2d 291, 297-98 (R.I. 2001) (quoting Rhode IslandAffiliate, ACLU, Inc. v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). That is, this Court must look no further than the complaint and assumes the allegations contained therein "to be true and views the facts in the light most favorable to the plaintiffs." Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v. Howard, 784 A.2d 291,297-98 (R.I. 2001)). This Court will not grant the motion "unless it appears to a certainty that [the Plaintiff] will not be entitled to relief under any set of facts which might be proved in support of [her] claim."Id. at 1037 (quoting Bragg v. Warwick Shoppers World, Inc., 227 A.2d 582,584 (R.I. 1967)).
 III. ANALYSIS: DEFENDANTS' MOTION A. The Trust as a Defendant and Individual Liability
First, Defendants argue that the Declaration of Trust exempts individual shareholders and trustees "from all manner of liability whatsoever" in connection with the affairs of the Trust and leaves only the Trust as a potential defendant. Defendants thus argue that the complaint must be dismissed in its entirety because the complaint names only the individual shareholders and the trustees, not the Trust. This Court disagrees.
 1. The Trust as a Defendant
Foremost, the Trust is a defendant in this action. Although Rule 10(a) of the Super. Ct. R. Civ. P. provides that "[i]n the complaint the title of the action shall include the names of all parties . . .," it has been held that naming a party in the body of the complaint but not in the caption amounts to a technical oversight, properly correctable by amendment. See Kedra v. Philadelphia, 454 F. Supp. 652, 657 n. 1 (D. Pa. 1978). This case is not an instance where a defendant who is not named in the caption would fail to have "meaningful notice of the claim against him from the body of the complaint," thus warranting dismissal.See Perito v. Plymouth House of Correction, 1991 U.S. App. LEXIS 529, at *6-7 (1st Cir. Jan. 9, 1991) (Unpublished).
The Court in Perito found the omission of a purported defendant's name in the caption as requiring dismissal because the complaint was "prolix to the point of confusion" and only briefly referred to that person, which was further "obscured among a thicket of allegations which [had] nothing to do with [that person]." Id. Consequently, the Court held that the purported defendant did not "receive meaningful notice of the claim against him from the body of the complaint." Id. The Court stated, however, that dismissal would not be warranted and only a technical violation would occur if the complaint was concise and lucid, giving the defendant notice of the claim.
This Court finds that the omission of the Trust from the caption amounts to a mere technical violation and does not warrant dismissal, as the Trust is named as a defendant throughout the body of the complaint, which — unlike in Perito — clearly and obviously identifies the Trust as a defendant. See Perito v. Plymouth House of Correction, 1991 U.S. App. LEXIS 529, at *6-7 (1st Cir. Jan. 9, 1991) (Unpublished); Kedra v.Philadelphia, 454 F. Supp. 652, 657 n. 1 (D. Pa. 1978). Paragraph number "4." of the complaint reads, "Defendant Environmental Science Services Trust (the `Trust'), upon information, is a Massachusetts business trust. . . ." In addition, the Trust is treated as a defendant throughout the complaint and, on a number of occasions, the complaint alleges wrongdoing on the part of the Trust and demands judgment against the Trust. For example, the complaint states,
 • "[i]n further breach of the Shareholders' Agreement, the Trust has failed and refused to pay the plaintiff. . . ." (Complaint at p. 8)
 • "[t]he [T]rust and the individual defendants have further breached the terms of the Shareholders' Agreement. . . ." (Id.)
 • "plaintiff demands judgment against the Trust. . . ." (Id. at 9)
 • "plaintiff demands judgment against the Trust. . . ." (Id. at 9)
 • "plaintiff demands judgment against the Trust. . . ." (Id. at 10)
 • "plaintiff demands judgment against the Trust. . . ." (Id. at 12)
Moreover, Defendants seem to rely on the mere technical aspect of Plaintiff's violation and do not allege any prejudice or lack of notice caused by the omission of the Trust from the caption of the complaint. This Court has discretion pursuant to Rule 41(b)(2) to dismiss an action for the plaintiff's failure to comply with the Rules, such as Rule 10(a). See Super. Ct. R. Civ. P. 41(b)(2). This Court's discretion to not dispose of Plaintiff's claim against the Trust on this technical ground is consistent with the "policy behind [this Court's] liberal pleading rules . . . [which provides that] cases in our system are not to be disposed of summarily on arcane or technical grounds." Hendrick v.Hendrick, 755 A.2d 784, 791 (R.I. 2000) (quoting Haley v. Town ofLincoln, 611 A.2d 845, 848 (R.I. 1992)). What is important is that the plaintiff provides the "opposing party fair and adequate notice of the type of claim being asserted." Id.
For these reasons, the complaint sufficiently names the Trust as a defendant for it to be, in fact, regarded as a defendant in the present action. See Perito v. Plymouth House of Correction, 1991 U.S. App. LEXIS 529, at *6-7 (1st Cir. Jan. 9, 1991) (Unpublished). The complaint provided the trustees with sufficiently meaningful notice of the claim against the Trust, and the trustees were named as defendants and received service of process.[3] The Plaintiff should amend the complaint to correct the omission of the Trust from the caption.
 2. Individual Liability
In addition, this Court denies Defendants motion to dismiss insofar as it seeks dismissal against the shareholders and trustees in their individual capacities. It does not "appear to a certainty that [the Plaintiff] will not be entitled to relief under any set of facts which might be proved in support of [her] claim." Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002). Defendants contend that the Declaration of Trust exempts individual shareholders and trustees from all liability. The applicable provisions of the Declaration of Trust, in their entirety, provide:[4]
 6.1 Exculpation of Trustees, Officers, Employees and Agents. No Trustee, officer, employee or agent of the Trust shall be liable to the Trust or to any other Person for any Act or omission except for his own willful misfeasance, bad faith or gross negligence.
 6.2 Limitation of Liability of Shareholders, Trustees, Officers, Employees and Agents. The Trustees, officers, employees and agents of the Trust in incurring any debts, liabilities or obligations or in taking or omitting any other actions for or in connection with the Trust are, and shall be deemed to be, acting as Trustees, officers, employees or agents of the Trust and not in their own individual capacities. The Trustees shall have no power to bind the Shareholders personally, or to call upon them for the payment of any money or any assessment whatsoever other than such sums as Shareholders may at any time personally agree to pay for new Shares to be acquired from the Trust. No Shareholder and, except to the extent provided in Section 6.1, no Trustee, officer, employee or agent shall be liable for (a) any debt, liability or obligation of any kind of, or with respect to, the Trust or (b) any claim, demand, judgment or decree against the Trust (in any such case in tort, contract, or otherwise), arising out of any action taken or omitted for or on behalf of the Trust and the Trust shall be solely liable therefore and resort shall be had solely to the Trust Property for the payment or performance thereof, and no Shareholder and, except as aforesaid, no Trustee, officer, employee or agent shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any other Person or Persons in connection with the Trust Property or the affairs of the Trust (or any actions taken or omitted for or on behalf of the Trust), and all such other Persons shall look solely to the Trust for satisfaction of claims of any nature arising in connection with the Trust Property or the affairs of the Trust (or any action taken or omitted for or on behalf of the Trust), it being the purpose of the trust estate created hereby to exempt the Trustees (except as aforesaid) and the Shareholders, present or future, from all manner of liability whatsoever. Each Shareholder shall be entitled to pro rata indemnity from the Trust Property if, contrary to the provisions hereof, such Shareholder shall be held to any personal liability.
On their face, these provisions seem all-inclusive and broad enough to exculpate the defendants from individual liability if the provisions are enforceable. No issue of fact apparently exists as to the parties' intent in drafting the provisions; the provisions unambiguously exclude the shareholders and trustees from liability. This Court's inquiry should not end here, however. The provisions may be unenforceable on public policy grounds or otherwise prohibited by statute or common law.[5]
 a. Nature of Business Trusts
At the outset, a brief inquiry into the nature of business trusts is helpful on this matter. As defined by statute, a Massachusetts business trust is "a trust operating under a written instrument or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares." Mass. Gen. Laws chap. 182 § 1 (2004). A business trust "is an adaptation of the common law trust for the purpose of carrying on a business enterprise originally used to avoid the restrictions against corporate ownership of real property. The corporate trust is essentially a business organization cast in the trust form. Minkin v. Commissioner of Revenue, 425 Mass. 174, 178 (1997) (internal citations omitted). Unlike with a traditional trust, which "is not a legal entity [that] can be sued directly," Morrison v. Lennett,415 Mass. 857, 859-860 (1993), a business trust, by statute, "may be sued directly `for debts and other obligations or liabilities contracted or incurred by the trustees, or by the duly authorized agents of such trustees.'" Id. at 859-860 n. 7 (quoting M.G.L. c. 182 § 6 (1990)).
A business trust resembles a corporation, possessing many of the attributes and characteristics of a corporation. State Street Trust Co.v. Hall, 311 Mass. 299, 302 (1942); Woonsocket Shopping Center, LP v.Wonder Properties, 1996 Mass. Super. LEXIS 706, at *12 (Feb. 23, 1996). In comparing corporations to business trusts, the Massachusetts Supreme Judicial Court has stated that
 "[t]itle to property in one case is held by the corporation and in the other by trustees; centralized management is effected in one by a board of directors and in the other by trustees; the continuity of both the corporation and the trust is uninterrupted by the death of a stockholder or shareholder; the transfer of beneficial interests in both is readily and easily accomplished by the transfer of the shares and the shareholders in each seek limited personal liability. The sum total of these distinctive features of a business trust has brought trusts into such close resemblance to corporations that they have been frequently considered as corporations, sometimes by virtue of constitutional or statutory provisions and sometimes without such provisions. The resemblance has been held to be sufficient to warrant legislation classifying them with corporations for some purposes." State Street Trust Co. v. Hall, 311 Mass. 299, 302-303
(1942).
In addition, Mass. Gen. Laws chap 182 § 6 makes the property of business trusts "subject to attachment and execution in like manner as if it were a corporation. . . ." Further, and perhaps most importantly (with regard to drawing an analogy between corporations and the Trust), a provision exists in the Declaration of Trust that gives the shareholders of the Trust "all of the rights and remedies of a shareholder of a corporation." In its entirety, this provision provides:
 "5.13 Rights of Shareholders. Notwithstanding any provision to the contrary contained herein, the Shareholders shall have all of the rights and remedies of a shareholder of a corporation under the Delaware General Corporation Law ("DGCL")[6]
with respect to both the Trust and Environmental Science Services, Inc., a Delaware corporation that is a wholly-owned subsidiary of the Trust (the "Corporation"), as though each of such Shareholders held their proportionate interest of shares in the Corporation directly. The Trustees shall hold a meeting of the Shareholders whenever a meeting of the shareholders of the Corporation is actually held or would be required to be held pursuant to the DGCL, the Corporation's by-laws or otherwise. At any such meeting, each of the Shareholders shall be entitled to vote their Shares and the Trustees shall be bound by such vote in casting the vote of the Trust as the shareholder of the Corporation." Declaration of Trust at 15.
For these reasons, it is appropriate to look to the law of corporations, particularly small, closely-held corporations[7] in considering the liability of the shareholders, officers and trustees of the Trust. In the instant case, the features of the Trust — most notably the "Rights of Shareholders" provision — "has brought [the Trust] into such close resemblance to corporations that [it should be] considered as [a] corporation," State Street Trust Co., 311 Mass. at 303, for the purpose of determining duties and individual liability. For example, a trustee would have a duty analogous to directors of a corporation. See id. at 302-03 (noting management in a corporation is effected by directors and in a trust, it is by the trustees).
 b. Personal Liability of Trustees
As for the personal liability of the trustees, Bibbo and Natale, this Court refuses — for three reasons — to dismiss the complaint against them in their individual capacity. First, the exculpatory and nonrecourse provisions of the Shareholders' Agreement provide an exception to their personal liability shield. Section 6.2 exempts the Trustees from all personal liability, except as stated in Section 6.1. Section 6.1 makes the Trustees liable for their "own willful misfeasance, bad faith or gross negligence."[8] Although Plaintiff's complaint does not directly allege or use the phrases "willful misfeasance" and/or "bad faith," it sufficiently asserts such conduct, especially when construed in favor of the Plaintiff for purposes of R.I. Super. Ct. R. Civ. P. 12(b)(6). For example, Plaintiff alleges Defendants "engaged in self dealing" and "intentionally and unlawfully attempted to revise" the Shareholders' Agreement to deprive her of the benefits to which she is entitled. Complaint at p. 10. Plaintiff further alleges additional breaches of fiduciary duties, self dealing and "other wrongful conduct." Complaint at p. 10-11.
In addition, the Plaintiff is not required to set out the precise legal theory underlying her claim, rather she must provide fair and adequate notice of the type of claim she is asserting. Hendrick v. Hendrick,755 A.2d 784, 791 (R.I. 2000) (quoting Haley v. Town of Lincoln,611 A.2d 845, 848 (R.I. 1992)). Here, after reading the complaint — especially after viewing the facts in the light most favorable to Plaintiff and resolving all doubts against the Defendants, see Giuliano,793 A.2d at 1036-37 — it is apparent that all of Plaintiff's claims involve willful misfeasance and/or bad faith. Indeed, after reading the complaint, "[o]ne can hardly resist but to say `something is rotten in [this] state' of affairs." Gabriel v. Benitez, 390 F. Supp. 988, 993
(D.P.R., 1975) (quoting William Shakespeare, Hamlet, Act I, Scene iv, 90: "Something is rotten in the state of Denmark").
Second, at least two sections of Massachusetts statutory law pertaining to corporations prohibit, to a certain extent, the elimination or limitation of the personal liability of directors. Although the sections allow the articles of organization[9] to eliminate or limit the personal liability of directors for breach of fiduciary duty, the two sections explicitly do not permit the limitation of personal liability for (1) breach of the duty of loyalty to the corporation or its shareholders, (2) "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law," or (3) transactions where the officer or director "derived an improper personal benefit." Mass. Gen. Laws chap. 156B § 13 (b) (1 1/2); Mass. Gen. Laws chap. 180 § 3. At the very least a factual question exists as to the extent of the directors/trustees breaches and whether their conduct goes so far as to run afoul of these statutory limitations on liability.
Third, this Court finds Defendants' reliance on the line of case law involving the limitation of personal liability pertaining to business trusts is misplaced. The only modern case on this subject cited by Defendants is Woonsocket Shopping Center v. Wonder Properties, No. 93-2169, 1996 Mass. Super. LEXIS 706 (Mass.Super.Ct. Feb. 23, 1996).Woonsocket Shopping Center is based on First Eastern Bank v. Jones,413 Mass. 654, 661-63 (1992).
In First Eastern Bank, the Massachusetts Supreme Judicial Court responded to a question certified by the United States District Court involving a contract creditor of a business trust. The Court answered that
 "at our common law, a trustee is personally liable on a contract the trustee signs on behalf of a trust unless it is agreed that the party entering the contract with the trustee shall look only to the trust's assets for payment or damages. The question whether such an agreement has been reached . . . is a classic question of the parties' intention. If the contract is unambiguous on the point, it will, absent fraud, govern." First Eastern Bank, 413 Mass. at 662
(citations omitted).
 First Eastern Bank does not involve an intra-corporate agreement among shareholders. Viewing the facts most favorably to Plaintiff, the conduct involved in this case goes further than a simple contract debt. As summarized below by Massachusetts Courts, directors (in this case "trustees" as well) have lofty duties to shareholders:
 Directors' fiduciary duties require that they be loyal to the corporation and not promote their own interests in a manner injurious to the corporation.[10] Baker v. Allen, 292 Mass. 169, 172 (1935). Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 410 (1937). Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 589, 593 (1975) (duty of care by one stockholder to another in close corporation is one of "utmost good faith and loyalty"). There is a similar duty of loyalty imposed on trustees. Ball v. Hopkins, 268 Mass. 260, 266 (1929). Trustees may not put themselves in a position where their interests are in conflict with the interests of the trust. Comstock v. Bowles, 295 Mass. 250, 258 (1936). See also 3 Scott, Trusts § 193.2, at 155 (Fratcher 4th ed. 1988) ("The trustee will be held accountable by the court if in the exercise of his power of control over the corporation he acts for his own interest rather than for the interest of the beneficiaries"). A trustee's first duty is the protection of the trust estate. No self-interest can be allowed to conflict with this responsibility. The burden of proving good faith and fairness is on the trustee, as is the burden to show that any questioned transaction was advantageous to the beneficiaries. See Ball v. Hopkins, 268 Mass. at 266; Burlingham v. Worcester, 351 Mass. 198, 203 (1966). The rule that a fiduciary may not derive personal advantage at the expense of the trust, nor put himself in a position antagonistic to the beneficiaries of the trust, will be strictly enforced. Anderson v. Bean, 272 Mass. 432, 448 (1930)." Johnson v. Witkowski, 30 Mass. App. Ct. 697, 705-706 (1991).
Even if First Eastern Bank is applicable in this case, the limitation of liability allowed in that case would apply only to Plaintiff's contract counts, and even in that case, the fraud exception cited inFirst Eastern Bank would apply, as Plaintiff's complaint raises such inferences.
 c. Personal Liability of Shareholders
For reasons similar to those cited above the individual defendants who are not trustees but only shareholders are also not entitled to dismissal under Super. Ct. R. Civ. P. 12(b)(6). The Massachusetts Supreme Judicial Court has held that shareholders in a close corporation owe each other a duty that is even stricter than that required of directors in general.Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 528 (1997). Therefore, it makes little sense to apply the above-discussed prohibitions on a director/trustee's limitation of liability under an exculpatory clause but allow a shareholder that protection.
Moreover, First Eastern Bank does not involve a contract among shareholders, and it is well-established that shareholders owe each other a duty well above that required for ordinary market place transactions. As summarized by the Massachusetts Supreme Judicial Court,
 "the relationship among stockholders in a close corporation must be one of trust, confidence, and absolute loyalty if the enterprise is to succeed. In this regard, a close corporation resembles a partnership. Donahue v. Rodd Electrotype Co., 367 Mass. 578, 587, 328 N.E.2d 505 (1975). Because of this relationship, stockholders in a close corporation owe one another the same fiduciary duty in the operation of the corporation that partners owe to one another. This fiduciary duty is one of the utmost good faith and loyalty. Id. at 593. Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency, or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 408 (1995).
The Defendants do not cite, and this Court is unaware of, any case where shareholders successfully disclaimed their liabilities and duties to other shareholders. At best, if the exculpatory or nonrecourse provision permitted in First Eastern Bank is applicable in this case to shareholders, it would only shield Defendants from Plaintiff's contract counts. Nevertheless, the fraud exception would make the shield inoperable.
 B. Validity of Action by Attorney-in-Fact
Second, Defendants argue that Plaintiff cannot claim that the Trust's revising of the Shareholders' Agreement was unauthorized because the Shareholders' Agreement irrevocably appointed the President or Treasurer of the Trust (Natale) as her attorney-infact. The Shareholders' Agreement provides that
 "Each Shareholder irrevocably appoints each person who may from time to time serve as President or Treasurer of the Trust as his attorney-in-fact with specific authority to execute, acknowledge, swear to, file, and deliver all consents, elections, instruments, certificates, and other documents and to take any other action requisite to carrying out the intention and purpose of this Agreement." Shareholders' Agreement at p. 8.
In reviewing powers of attorney, courts
 "must put [themselves] in the place of the parties to the instrument and give its words their plain and ordinary meaning in the light of the circumstances and in view of the subject matter. The rule of construction that a power of attorney must be strictly interpreted does not go to the extent of destroying the purpose of the power. Authority to conduct a transaction includes authority to do acts which are incidental to it, or are reasonably necessary to accomplish it." McQuade v. Springfield Safe Deposit Trust Co., 333 Mass. 229, 233 (1955) (internal citations omitted).
The instant attorney-in-fact provision primarily authorizes ministerial acts. It is inconceivable that the provision authorizes Plaintiff's attorney-in-fact to arguably act against her best interest and "execute" a Shareholders' Agreement on her behalf to significantly diminish the purchase value of her shares and provide a personal benefit to the attorney-in-fact. At best, even if such conduct is permitted, a factual question exists as to whether this was authorized "in light of the circumstances and in view of the subject matter."
 C. Delaware's Court of Chancery
Defendants seek dismissal of all claims against them based on Plaintiff's theory she was denied permission to inspect books and records of the Trust. Defendants assert this Court lacks jurisdiction regarding Plaintiff's claim that she was refused inspection. Defendants maintain the Delaware Court of Chancery has exclusive jurisdiction regarding the inspection of books and records. Pursuant to 8 Del. C. § 220, "[t]he Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought."
The Defendant's argument apparently arises from Count I (Breach of Contract) of the Plaintiff's complaint. There, the Plaintiff alleges:
 "[t]he Trust and individual defendants have further breached the terms of the Shareholders' Agreement, and the Declaration of Trust by failing and refusing to make the records of the Trust available for inspection by Plaintiff, so that she can verify the correct purchase price for her shares, and so that she can verify other information, including but not limited to the existence of (i) a valid deferred compensation plan and (ii) the Trust's financial covenants with its lender, directly bearing on her right to receive payment of the purchase price."
The Plaintiff does not request this Court order that inspection. Thus, whether this Court or the Delaware Court of Chancery has jurisdiction over the permission or refusal of that inspection need not be addressed.
Further, the Plaintiff's breach of contract claim does not rest solely on her allegations of being denied inspection. In her complaint, the Plaintiff further alleges Defendants breached the Shareholders' Agreement by (1) revising it to reduce the purchase price of her shares, and (2) refusing to purchase her shares pursuant to the previous formula. Therefore, the Plaintiff's breach of contract claim will not fail, because it is not based exclusively on her being denied inspection of certain records.
 D. Forum Non Conveniens
Finally, Defendants assert the doctrine of "forum non conveniens" in support of their motion to dismiss. The doctrine of forum non-conveniens holds simply that a court may resist the imposition of jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). See 15 Wright, Miller Cooper, Federal Practice and Procedure § 3828 (2d ed. 1986). The Defendants argue Massachusetts would be a more convenient forum to litigate this matter because (1) the Declaration of Trust and the Shareholders' Agreement both require the application of Massachusetts law; (2) the Trust is a Massachusetts business trust, and (3) "all real parties in interest (including Plaintiff Courtemanche) and witnesses reside in Massachusetts." The Defendants continue their argument with an analysis of public and private interest factors, which are to be considered by the Court in deciding whether to dismiss a case. The Court in Gulf Oil Corp. described these factors.
 "Private interest factors include the relative ease of access to proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, possibility of view of the premises if that be appropriate and all practical problems that make trial of a case easy, expeditious and inexpensive. Public interest considerations in applying the doctrine include the undesirability of piling up litigation in congested centers, the burden of jury duty on people of a community having no relation to the litigation, the local interest in having localized controversies decided at home and the unnecessary injection of problems in conflict of laws." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-9 (1947).
However, both the Defendants' argument that Massachusetts is a more convenient forum and their analysis of public and private interest factors are unnecessary, since neither the Rhode Island Supreme Court, nor the Rhode Island Legislature has formally recognized this doctrine's application. Perusse v. AC and S, Inc., 2001 R.I. Super. LEXIS 57 (2001). This Court further observes that if this doctrine was applicable to this matter, the Court does not find Defendants' argument compelling. Given the close proximity of the two states involved, it is not unfair, inconvenient or significantly more expensive to the parties in interest for Rhode Island to serve as home forum,[11] nor will this Court have difficulty in applying Massachusetts law as necessary.
 Conclusion
For the forgoing reasons, this Court denies Defendants' Sup. Ct. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff's complaint.
[1] "Defendants' Motion to Dismiss" was submitted by the attorneys of "Defendants Robert V. Bibbo and Charles J. Natale, Jr., as Trustees of the Environmental Science Services Trust, Robert V. Bibbo, individually, Charles J. Natale, individually, Christopher J. Rein, individually, Glenn T. Almquist, individually, and Peter Nangeroni, individually."
[2] ESS was formerly known as Environmental Science Services, Inc.
[3] Unlike trusts in general, a business trust is considered a legal entity and may be sued directly; its property is subject to attachment and execution as if it is a corporation and service of process is upon a trustee. See Mass. Gen. Laws chap. 182 § 6; Morrison v. Lennett,415 Mass. 857, 860 n. 7 (Mass. 1993).
[4] One provision seems to be an exculpatory clause and the other appears to be a nonrecourse clause. "Ordinarily, an exculpatory clause releases a party from his wrongful acts. A nonrecourse clause, on the other hand, ordinarily creates a limitation on personal liability."Sylvia v. Johnson, 44 Mass. App. Ct. 483, 484 (1998).
[5] The parties agree that Massachusetts law governs substantively but that Rhode Island procedural rules apply.
[6] As noted above, the parties agree that Massachusetts law governs substantively. One caveat: the parties seem to agree that Delaware law governs the right of a shareholder to force the corporation to produce its books and records.
[7] "[A] close corporation [is] typified by: (1) a small number of stockholders; (2) no ready market for the corporate stock; and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." Donahue v. Rodd ElectrotypeCo., 367 Mass. 578, 586 (1975). From the face of the complaint, the Environmental Science Services Trust apparently meets this definition.
[8] As discussed below, Bibbo and Natale may have broader liability because the exculpatory and nonrecourse clauses may overreach and violate public policy and Massachusetts statutes.
[9] In this case, the analogous instrument(s) would be the Declaration of Trust and/or Shareholders' Agreement.
[10] Inserted here is a footnote in this excerpt:
 We point to Chief Judge Cardozo's lofty language: "Joint venturers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the `disintegrating erosion' of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a higher level than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." Meinhard v. Salmon, 249 N.Y. 458, 464
(1928).
[11] The Court notes that Defendants Rein and Almquist are Rhode Island residents, and the Trust's principal place of business is in East Providence, Rhode Island